**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

**FILED MARCH 8, 2005**

ADVOCACY ORGANIZATION FOR
PATIENTS & PROVIDERS,

    Plaintiff-Appellant,

v                                 No. 124639

AUTO CLUB INSURANCE ASSOCIATION,
ALLSTATE INSURANCE COMPANY,
CITIZENS INSURANCE COMPANY,
FARM BUREAU INSURANCE COMPANY,
FARMER'S INSURANCE EXCHANGE,
FRANKENMUTH MUTUAL INSURANCE
COMPANY, IMPERIAL MIDWEST
INSURANCE COMPANY, SECURA
INSURANCE MUTUAL COMPANY, STATE
FARM INSURANCE COMPANY,
TRANSAMERICA INSURANCE GROUP,
WOLVERINE MUTUAL INSURANCE
COMPANY, LAHOUSSE-BARTLETT
DISABILITY, MANAGEABILITY, INC.,
MEDCHECK MEDICAL AUDIT SERVICES,
RECOVERY UNLIMITED, INC., and
AUTO-OWNERS INSURANCE COMPANY,

    Defendants-Appellees.

_____

**MEMORANDUM OPINION**

    This declaratory judgment action concerns obligations

under the no-fault act, MCL 500.3101 *et seq.*, to pay

medical expenses. Plaintiffs are individual medical providers, two guardians of catastrophically injured victims of automobile accidents, and an organization of health-care providers and patients that principally seeks to protect the legal rights of both groups. Defendants are either no-fault insurance companies that have issued policies to Michigan motorists or the review companies employed by one or more of those insurers to review medical bills arising from automobile accidents.

MCL 500.3107(1)(a) requires that an insurer pay "all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3157 provides that a medical provider "may charge a reasonable amount for the products, services and accommodations rendered. The charge shall not exceed the amount the person or institution customarily charges for like products, services and accommodations in cases not involving insurance."

After a hearing on the parties' respective motions for summary disposition, the trial court ruled that defendants were entitled to review any medical charges and pay only those determined to be reasonable. The trial court further ruled that even though a medical provider's charge does not

2

exceed the amount that provider customarily charges in cases not involving insurance, that fact alone does not establish that the charge is reasonable.

The Court of Appeals affirmed. 257 Mich App 365; 670 NW2d 569 (2003). It ruled that it is for the trier of fact to determine whether a medical charge, albeit "customary," is also reasonable. 257 Mich App 379.

Because we agree with the Court of Appeals resolution of this issue, and the others presented to it, we affirm. MCL 7.302(G)(1).

Clifford W. Taylor
Maura D. Corrigan
Stephen J. Markman

# STATE OF MICHIGAN

## SUPREME COURT

ADVOCACY ORGANIZATION FOR
PATIENTS & PROVIDERS,

    Plaintiff-Appellant,

v                                                   No. 124639

AUTO CLUB INSURANCE ASSOCIATION,
ALLSTATE INSURANCE COMPANY,
CITIZENS INSURANCE COMPANY,
FARM BUREAU INSURANCE COMPANY,
FARMER'S INSURANCE EXCHANGE,
FRANKENMUTH MUTUAL INSURANCE
COMPANY, IMPERIAL MIDWEST
INSURANCE COMPANY, SECURA
INSURANCE MUTUAL COMPANY, STATE
FARM INSURANCE COMPANY,
TRANSAMERICA INSURANCE GROUP,
WOLVERINE MUTUAL INSURANCE
COMPANY, LAHOUSSE-BARTLETT
DISABILITY, MANAGEABILITY, INC.,
MEDCHECK MEDICAL AUDIT SERVICES,
RECOVERY UNLIMITED, INC., and
AUTO-OWNERS INSURANCE COMPANY,

    Defendants-Appellees.

---

CAVANAGH, J. (*concurring*).

At oral argument it became very clear that defendants' methodologies in determining reasonableness were never at issue at the trial court level, which accounts for the dearth of evidence regarding those methodologies. Counsel for plaintiff admitted that the reason discovery was not more directed toward illuminating the methodologies was

because no one asked plaintiffs before this Court's leave order to discuss how reasonableness should be assessed. Although I agree with the Court of Appeals conclusion that "reasonable" and "customary" are two separate inquires, I view its reference to the 80th percentile test, given this record, as dicta. Given that the question of reasonableness was not before the lower courts, and, consequently, discovery did not center on the question, I would be apprehensive about sanctioning any method without knowing its full details. I agree also with the Court of Appeals concurrence that urged our Legislature to address this issue and implement some guidelines in this area, as other no-fault states have done.

Michael F. Cavanagh
Marilyn Kelly

2

S T A T E   O F   M I C H I G A N

SUPREME COURT

ADVOCACY ORGANIZATION FOR
PATIENTS & PROVIDERS,

    Plaintiff-Appellant,

v                                   No. 124639

AUTO CLUB INSURANCE ASSOCIATION,
ALLSTATE INSURANCE COMPANY,
CITIZENS INSURANCE COMPANY,
FARM BUREAU INSURANCE COMPANY,
FARMER'S INSURANCE EXCHANGE,
FRANKENMUTH MUTUAL INSURANCE
COMPANY, IMPERIAL MIDWEST
INSURANCE COMPANY, SECURA
INSURANCE MUTUAL COMPANY, STATE
FARM INSURANCE COMPANY,
TRANSAMERICA INSURANCE GROUP,
WOLVERINE MUTUAL INSURANCE
COMPANY, LAHOUSSE-BARTLETT
DISABILITY, MANAGEABILITY, INC.,
MEDCHECK MEDICAL AUDIT SERVICES,
RECOVERY UNLIMITED, INC., and
AUTO-OWNERS INSURANCE COMPANY,

    Defendants-Appellees.
_____

WEAVER, J. (*concurring*).

    I join fully in Justice Cavanagh's concurrence.

    I write separately because this case is further
evidence that this Court needs to address and open for
public comment the specific procedures to be followed when
a justice decides whether or not to participate in a case,
and whether Const 1963, art 6, § 6 requires justices to

give written reasons for their decisions whether or not to participate in a case.

When this Court entered its order granting leave to appeal on June 25, 2004, Justice Young was shown as not participating; he is also shown as not participating in this memorandum opinion. No public or written explanation for Justice Young's decision not to participate in the case has been given to the Court, the parties, or the public.

A justice's nonparticipation in a case may arise in one of two ways. A justice may decide, on his own initiative, not to participate in a case, and be shown as not participating. Alternatively, a party may request the recusal of a justice from a case. Recusal is defined as "[t]he process by which a judge is disqualified on objection of either party (or disqualifies himself or herself) from hearing a lawsuit because of self interest, bias or prejudice." Black's Law Dictionary (6th ed).

It is now clear to me that there is a right and an expectation of the people of Michigan that a justice will participate in every case unless there is a valid publicly known reason why the justice should not participate in a particular case. Traditionally, in this Court a justice's decision on whether to participate or not participate in a case has been a secret matter, and justices have not made

2

public the reasons for that decision.[1]  But a justice's decision whether to participate or not participate in a case and the reasons for that decision should not be governed by tradition and secrecy; they should be governed by the law, the Constitution, and the Michigan Court Rules made in conformance with the Constitution; and they should be made publicly and in writing for the record.  This Court should set the highest standards for clear, fair, orderly, and public procedures.

The question whether a justice should participate or

---

[1]From January 1, 1995, when I began serving on the Michigan Supreme Court, until May 2003, when I first stated that justices should publish in the record of the case the reason(s) for the justice's decision whether to participate or not participate in a case, I was shown as not participating approximately 251 times, with no explanation given.  In almost all these cases, I did not participate because I had been on the Court of Appeals panels that earlier decided the cases and I was informed that justices "traditionally" did not participate in such cases.  In retrospect, I believe that reasons for my decisions not to participate should have been made part of the Court's orders or opinions.

I filed a detailed explanation of my decision not to participate in *In re JK,* 468 Mich 1239 (2003).  In *Gilbert v DaimlerChrysler Corp*, 470 Mich 749; 685 NW2d 391 (2004), reconsideration den 472 Mich 1201 (2005), the plaintiff's attorney moved to disqualify then-Chief Justice Corrigan and Justices Weaver, Taylor, Young, and Markman.  I attached to the order denying that motion a written explanation for my decision to participate in the case.  Similarly, in *Graves v Warner Bros,* 669 NW2d 552 (2003), the plaintiff filed a motion for reconsideration, asking that then-Chief Justice Corrigan and Justices Weaver, Taylor, Young, and Markman recuse themselves from participating in the case.  I filed a statement giving reasons for my decision to participate in the case.

3

not participate in a case arises with regularity. Since May 2003, when I proposed opening an administrative file on the recusal procedure in *In re JK,* 468 Mich 1239 (2003), a justice has been shown as not participating, with no reason given, in at least 31 cases.[2]

The questions raised in this and any other case in which a justice's participation or nonparticipation arises are:

> 1) Are individual justices bound by the requirements of art 6, § 6 of the 1963 Michigan Constitution that states, "Decisions of the supreme court . . . shall be in writing and shall contain a concise statement of the facts and reasons for each decision . . ."?

> 2) Do the procedures regarding the disqualification of judges set forth in Michigan Court Rule 2.003 apply to Supreme Court justices?

Const 1963, art 6, § 6, which states that "Decisions of the supreme court . . . shall be in writing and shall contain a concise statement of the facts and reasons for each decision . . ." requires that justices give written reasons for each decision.[3] There is no more fundamental

---

[2] The list of cases in which the various justices were shown as not participating is attached as Appendix A.

[3] Art 6, § 6 of the 1963 Michigan Constitution states, in full:

> Decisions of the supreme court, including all decisions on prerogative writs, shall be in writing and shall contain a concise statement of the facts and reasons for each decision and reasons for each

4

purpose for the requirement that the decisions of the Court be in writing than for the decisions to be accessible to the citizens of the state. Because a justice's decision to not participate in a case can, itself, change the outcome of a case, the decision is a matter of public significance and public access and understanding regarding a justice's participation or nonparticipation is vital to the public's ability to assess the performance of the Court and the performance of the Court's individual justices. Thus, the highest and best reading of art 6, § 6 requires that a justice's self-initiated decision not to participate, or a challenged justice's decision to participate or not participate, should be in writing and accessible to the public.

Further, Michigan Court Rule 2.003, which regulates the procedures for the disqualification of judges, applies to Michigan Supreme Court justices.[4] Michigan Court Rule 2.001 provides that the rules in chapter 2, which includes MCR 2.003, apply to all courts established by the Constitution and laws of the state of Michigan.[5] The

---

denial of leave to appeal. When a judge dissents in whole or in part he shall give in writing the reasons for his dissent.

[4] The full text of MCR 2.003 is attached as Appendix B.

[5] MCR 2.001 states:

Michigan Supreme Court is a court established by the Michigan Constitution. Thus, a plain reading of the court rule shows that MCR 2.003 governs the procedures for the disqualification of Michigan Supreme Court justices.

Almost two years ago, in May 2003, this Court's longstanding failure to follow and apply MCR 2.003 to itself became apparent to me.[6] As a result, I proposed an amendment of MCR 2.003 that would clarify the applicability of MCR 2.003 and bring MCR 2.003 into conformance with the requirements of Const 1963, art 6, § 6. The amendment I proposed requires a justice to publish in the record of the case the reason(s) for the justice's decision whether to participate or not participate in a case.[7] In response to my recommendation that the Court open an administrative file and take public comments on such a rule, the Court opened an administrative file, ADM 2003-26, on May 20,

---

The rules in this chapter govern procedure in all civil proceedings in all courts established by the constitution and laws of the State of Michigan, except where the limited jurisdiction of a court makes a rule inherently inapplicable or where a rule applicable to a specific court or a specific type of proceeding provides a different procedure.

[6] In *In re JK,* 468 Mich 1239 (2003), my participation in a case became an issue, which led me to research the procedures governing the participation and disqualification of justices.

[7] See *In re JK,* 468 Mich 1239 (2003).

6

2003.  But almost two years later, the Court has not yet placed the proposed amendment or the issue on any of the public hearing agendas on administrative matters held during that time.  There have been five such public hearings since May 2003:  September 23, 2003, January 29, 2004, May 27, 2004, September 15, 2004, and most recently January 27, 2005.  Nor has the Court taken any other action regarding a clear, fair, orderly, and public procedure for the participation or nonparticipation of justices of the Supreme Court.

A justice's decision whether to participate or not participate in a case and the reasons for that decision should not be governed by tradition and secrecy; they should be governed by the law, the Constitution, and the Michigan Court Rules made in conformance with the Constitution; and they should be made publicly and in writing for the record.  This Court should set the highest standards for clear, fair, orderly, and public procedures.

I continue to urge the Court to recognize, open for public comment, and address this ongoing need to have clear, fair, orderly, and public procedures concerning the participation or nonparticipation of justices.

                                        Elizabeth A. Weaver

7

Chief Justice Taylor was shown as not participating in two cases. *Booker v Detroit,* 469 Mich 892 (2003), and *Neal v Dep't of Corrections*, 471 Mich 928 (2004).

Justice Cavanagh was shown as not participating in two cases. *Konieczka v Dep't of Transportation,* 468 Mich 912 (2003), and *Herwig-Tucker v Detroit Entertainment, LLC,* 471 Mich 873 (2004).

Justice Kelly was shown as not participating in seven cases. *Boyle v Gen Motors Corp,* 468 Mich 1249 (2003), *Woodman v Miesel Sysco Food Service Co,* 469 Mich 855 (2003), *Grievance Administrator v Raaflaub,* 668 NW2d 146 (2003), *People v Wright*, 469 Mich 880 (2003), *People v White,* 469 Mich 877 (2003), *Sonsynath v Dep't of Transportation,* 668 NW2d 153 (2003), and *People v Herbert,* 470 Mich 857 (2004).

Justice Corrigan was shown as not participating in one case. *Shaya v Universal Standard Medical Laboratories, Inc,* 469 Mich 994 (2004).

Justice Young was shown as not participating in 8 cases. *Bomarko, Inc v Mercy Health Services No 2,* 468 Mich 915 (2003), *Auto Club Ins Ass'n v Juncaj,* 468 Mich 923 (2003), *Brooks v State Farm Mut Automobile Ins Co,* 469 Mich 874 (2003), *Blamer v Guiang,* 469 Mich 899 (2003), *People v Shook,* 469 Mich 911 (2003), *Fournier v Mercy Community Health Care System-Port Huron,* 469 Mich 921 (2003), *Warber v Trinity Health Corp,* 469 Mich 1001 (2004), and *Lawrence v Battle Creek Health Systems,* 469 Mich 1051 (2004).

Justice Markman was shown as not participating in eleven cases. *People v Nevers,* 469 Mich 881 (2003), *People v Bahoda,* 469 Mich 945 (2003), *Shacket Developments, Inc v Labana,* 469 Mich 909 (2003), *Shaya v Universal Standard Medical Laboratories, Inc,* 469 Mich 994 (2004), *Hughes v Hall,* 469 Mich 1016 (2004), *People v Harwell,* 469 Mich 1017 (2004), *Grievance Administrator v Zipser,* 469 Mich 1307 (2004), *People v Zakar,* 470 Mich 854 (2004), *Landes v Equity Resource Environmental,* 470 Mich 864 (2004), *People v Nevers,* 683 NW2d 674 (Mich, 2004), and *American Bumper and Mfg Co v Nat'l Union Fire Ins Co of Pittsburgh,* 471 Mich 948 (2004).

MCR 2.003, Disqualification of Judge, provides:

(A) Who May Raise. A party may raise the issue of a judge's disqualification by motion, or the judge may raise it.

(B) Grounds. A judge is disqualified when the judge cannot impartially hear a case, including but not limited to instances in which:

(1) The judge is personally biased or prejudiced for or against a party or attorney.

(2) The judge has personal knowledge of disputed evidentiary facts concerning the proceeding.

(3) The judge has been consulted or employed as an attorney in the matter in controversy.

(4) The judge was a partner of a party, attorney for a party, or a member of a law firm representing a party within the preceding two years.

(5) The judge knows that he or she, individually or as a fiduciary, or the judge's spouse, parent or child wherever residing, or any other member of the judge's family residing in the judge's household, has an economic interest in the subject matter in controversy or in a party to the proceeding or has any other more than de minimis interest that could be substantially affected by the proceeding.

(6) The judge or the judge's spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(a) is a party to the proceeding, or an officer, director or trustee of a party;

(b) is acting as a lawyer in the proceeding;

(c) is known by the judge to have a more than de minimis interest that could be

9

substantially affected by the proceeding;

      (d) is to the judge's knowledge likely to be a material witness in the proceeding.

      A judge is not disqualified merely because the judge's former law clerk is an attorney of record for a party in an action that is before the judge or is associated with a law firm representing a party in an action that is before the judge.

      (C) Procedure.

      (1) *Time for Filing*. To avoid delaying trial and inconveniencing the witnesses, a motion to disqualify must be filed within 14 days after the moving party discovers the ground for disqualification. If the discovery is made within 14 days of the trial date, the motion must be made forthwith. If a motion is not timely filed, untimeliness, including delay in waiving jury trial, is a factor in deciding whether the motion should be granted.

      (2) *All Grounds to be Included; Affidavit*. In any motion under this rule, the moving party must include all grounds for disqualification that are known at the time the motion is filed. An affidavit must accompany the motion.

      (3) *Ruling.* The challenged judge shall decide the motion. If the challenged judge denies the motion,

      (a) in a court having two or more judges, on the request of a party, the challenged judge shall refer the motion to the chief judge, who shall decide the motion de novo;

      (b) in a single-judge court, or if the challenged judge is the chief judge, on the request of a party, the challenged judge shall refer the motion to the state court administrator for assignment to another judge, who shall decide the motion de novo.

      (4) *Motion Granted*. When a judge is disqualified, the action must be assigned to

another judge of the same court, or, if one is not available, the state court administrator shall assign another judge.

(D) Remittal of Disqualification. If it appears that there may be grounds for disqualification, the judge may ask the parties and their lawyers to consider, out of the presence of the judge, whether to waive disqualification. If, following disclosure of any basis for disqualification other than personal bias or prejudice concerning a party, the parties without participation by the judge, all agree that the judge should not be disqualified, and the judge is then willing to participate, the judge may participate in the proceedings. The agreement shall be in writing or placed on the record.

# STATE OF MICHIGAN

## SUPREME COURT

ADVOCACY ORGANIZATION FOR
PATIENTS & PROVIDERS,

    Plaintiff-Appellant,

v                                 No. 124639

AUTO CLUB INSURANCE ASSOCIATION,
ALLSTATE INSURANCE COMPANY,
CITIZENS INSURANCE COMPANY,
FARM BUREAU INSURANCE COMPANY,
FARMER'S INSURANCE EXCHANGE,
FRANKENMUTH MUTUAL INSURANCE
COMPANY, IMPERIAL MIDWEST
INSURANCE COMPANY, SECURA
INSURANCE MUTUAL COMPANY, STATE
FARM INSURANCE COMPANY,
TRANSAMERICA INSURANCE GROUP,
WOLVERINE MUTUAL INSURANCE
COMPANY, LAHOUSSE-BARTLETT
DISABILITY, MANAGEABILITY, INC.,
MEDCHECK MEDICAL AUDIT SERVICES,
RECOVERY UNLIMITED, INC., and
AUTO-OWNERS INSURANCE COMPANY,

    Defendants-Appellees.

_____

CORRIGAN, J. (*concurring*).

    I concur with the majority opinion in this case and write separately to respond to Justice Weaver's now-familiar views regarding this Court's recusal procedures. (See *In re JK,* 468 Mich 1239 [2003]; *Gilbert v DaimlerChrysler Corp,* 469 Mich 889 [2003].)

All the members of this Court serve with the knowledge that "[t]he Due Process Clause requires an unbiased and impartial decisionmaker." *Cain v Dep't of Corrections*, 451 Mich 470, 497; 548 NW2d 210 (1996). It is therefore standard practice for each justice of this Court to voluntarily recuse himself or herself when the justice cannot participate impartially.

In her concurring statement, Justice Weaver correctly points out that a justice may choose whether to publish his or her reasons for recusal. There is nothing secretive or sinister in this tradition. Indeed, Justice Weaver acknowledges that over an eight-year period she herself declined to publish reasons for her nonparticipation in approximately 251 cases.[1]

Like justices of the Michigan Supreme Court, the justices of the United States Supreme Court sometimes do and sometimes do not state their reasons for determining whether to participate in a decision. See, e.g., *Cheney v United States Dist Court for the Dist of Columbia*, ___ US ___; 124 S Ct 1391; 158 L Ed 2d 225 (2004); *Intel Corp v Advanced Micro Devices, Inc*, ___ US ___; 124 S Ct 2466; 159 L Ed 2d 355 (2004); *United States v Hatter*, 532 US 557; 121

---

[1] *Ante* at 3 n 1.

2

S Ct 1782; 149 L Ed 2d 820 (2001); *Fed Election Comm v NRA Political Victory Fund*, 513 US 88; 115 S Ct 537; 130 L Ed 2d 439 (1994); *Arizona v United States Dist Court for the Dist of Arizona*, 459 US 1191; 103 S Ct 1173; 75 L Ed 2d 425 (1983); *Laird v Tatum*, 409 US 824; 93 S Ct 7; 34 L Ed 2d 50 (1972). Several of our sister states follow a similar recusal procedure.[2]

Like Justice Weaver's 251 pre-2003 recusal decisions without explanation, the thirty-one recusal decisions by the remaining six members of the Court over the past two years comport with our Constitution[3] and the Michigan Court

---

[2] Much like Michigan, many states have adopted judicial canons informed by the Model Code of Judicial Conduct. See Colorado Code of Judicial Conduct, Ch 24, Canon 3(C) and (E); Iowa Code of Judicial Conduct, Ch 51, Canon 3(C) and (D); Fla Stat Ann Code of Judicial Conduct, Canon 3(E) and (F); New York Code of Judicial Conduct, Canon 3(E) and (F); Ohio Code of Judicial Conduct, Canon 3(G) and (H).

[3] The recusal standards that Justice Weaver advances rest on her interpretation of Const 1963, art 6, § 6. Justice Weaver's own prior positions are inconsistent in this regard. For instance, in *Gilbert v DaimlerChrysler Corp*, 469 Mich 883 (2003), she chose to not participate with respect to other justices on motions for disqualification because she felt it appropriate to decide only whether she herself should participate, and not whether other justices should do so. Such a posture can *only* be understood as characterizing a denial of a motion for disqualification as an individualized determination made by each justice, and not as a "[d]ecision[] of the supreme court" for purposes of art 6, § 6. Interestingly, in a number of what are *indisputably* "[d]ecisions of the supreme court," Justice Weaver chose to offer no reasons or

3

Rules. Justice Weaver is, of course, entitled to now disagree with our traditional recusal procedures, and as she notes, ADM 2003-26 was opened on May 20, 2003, in response to her concerns. That file is being considered by this Court. The same is true for its predecessor, ADM 2003-24, which this Court opened on April 30, 2003, to consider the disqualification rule when a justice participated in a case at the Court of Appeals.

In addition, in now-closed administrative files, this Court has already considered local judicial disqualification rules, justices' participation in cases, and amending or interpreting MCR 2.003. See ADM 2002-41 (opened October 1, 2002, and closed April 2, 2003); ADM 1999-60 (opened November 30, 1999, and closed October 6, 2000); ADM 1999-28 (opened April 30, 1999, and closed January 4, 2001; reopened May 1, 2001, and closed April 18, 2002); ADM 1992-18 (discussed June 4, 1992, and closed September 1994); ADM 1991-22 (reported November 7, 1991,

---

explanation for her own positions. See, e.g., *Taylor v Gate Pharmaceuticals,* 468 Mich 1, 19; 658 NW2d 127 (2003) (Weaver, J., "concurred in the result only"); *People v Yost*, 468 Mich 122, 134; 659 NW2d 604 (2003) ("concurred in the result only"); *Nemeth v Abonmarche Dev, Inc*, 457 Mich 16, 44; 576 NW2d 641 (1998) ("concurred only in the result"); *People v Jendrzejewski*, 455 Mich 495, 521; 566 NW2d 530 (1997) ("concurred only in the result").

4

and closed September 1, 1995).  In short, like Justice Weaver, the rest of this Court is cognizant of the "need to have clear, fair, orderly, and public procedures" in place with respect to the administration of justice.[4]

Maura D. Corrigan

YOUNG, J., took no part in the decision of this case.

---

[4] *Ante* at 7.