669 N.W.2d 265 (2003)
Linda M. GILBERT, Plaintiff-Appellee,
v.
DAIMLERCHRYSLER CORPORATION, Defendant-Appellant.
Docket No. 122457, COA No. 227392.
Supreme Court of Michigan.
September 17, 2003.
On order of the Court, the motion for recusal and for an evidentiary hearing is considered, and it is DENIED.
KELLY, J., not participating in the decision regarding this motion.
WEAVER, J., not participating in the decision regarding the motion to recuse Chief Justice CORRIGAN and Justices TAYLOR, YOUNG and MARKMAN, denies the motion to recuse herself and states:
On April 8, 2003, this Court entered an order granting defendant's application for leave to appeal.[1] Subsequently, plaintiff filed a motion for recusal by Chief Justice Corrigan and Justices Weaver, Taylor, Young, and Markman from hearing this appeal. Plaintiff also asks that there be an evidentiary hearing on the motion for recusals.
A challenged judge decides the motion asking for his disqualification. MCR 2.003(C)(1)(3). Therefore, even though the plaintiff's motion also asks for recusal by Chief Justice Corrigan and Justices Taylor, Young and Markman, the only issue before me is whether I should recuse myself from participating in this appeal.[2] I do not decide whether my colleagues should recuse themselves or not.
As explained below, given the nature of the allegations plaintiff makes supporting the request for my recusal, there is no need for an evidentiary hearing for me to decide whether to participate in this matter. I deny plaintiff's motion requesting that I recuse myself from this appeal.

I
In requesting my recusal from this appeal, plaintiff asserts only that the Michigan Chamber of Commerce, which filed a brief as amicus in this case, contributed to my campaign for reelection to the Michigan Supreme Court in 2002 and aired advertisements advocating my reelection.[3]
While plaintiff alleges that Chief Justice Corrigan and Justices Taylor, Young and Markman have made statements about plaintiff's attorney, Geoffrey Fieger, and the issues in this case demonstrating bias or prejudice in this appeal, plaintiff does not allege that I have made any such statements. For the record, I note that I have not made or caused to be published any statements about any of the parties, *266 their attorneys, the amicus, or the issues in this case that would raise the issue of bias or prejudice on my part.
In 2002, the Michigan Chamber of Commerce made a contribution of $15,055 directly to my reelection campaign.[4] The Chamber also spent $840,000 on advertisements supporting the reelection of Justice Young and myself that it created and aired without my knowledge or participation.[5] In the interest of complete disclosure, I also note that my reelection campaign records show that it received contributions of $200 from plaintiff's attorney, Geoffrey Fieger; $2,000 from DaimlerChrysler's political action committee (PAC); $250 from DaimlerChrysler's assistant general counsel, Steven Hantler; $375 each from DaimlerChrysler's attorneys Elizabeth Hardy and Thomas Kienbaum; and $500 from retired Justice Patricia Boyle, of counsel for DaimlerChrysler in this case.
Plaintiff essentially asserts that the Chamber's contributions to my reelection campaign and the advertisements that the Chamber produced and aired advocating my reelection are inherent cause for my recusal from the case. I disagree. Under the current system for selection of Michigan Supreme Court justices, the rules clearly allow both the contributions that were made to my campaign and the advertisements that the Chamber created and aired supporting my reelection.
The question, given the current election system, is not whether amicus made contributions to my reelection campaign or created and aired advertisements supporting my reelection, but whether those contributions and that support would influence my judgment in this appeal. A judge is disqualified from participating in a case when the judge cannot impartially hear the case, including when the judge is personally biased or prejudiced for or against a party or attorney. MCR 2.003(B). The contribution to my 2002 reelection campaign made by amicus, Michigan Chamber of Commerce, and the advertisements that the Chamber produced and aired have not caused me to be influenced for or against either party. None of the contributions to my reelection campaign nor any of the advertisements aired supporting my reelection have even the remotest effect on my decisions and judgment as a justice of this Court.
I have given careful consideration to plaintiff's request that I recuse myself from participating in this case. Because I am neither biased nor prejudiced for or against anyone in the case I deny plaintiff's motion requesting that I recuse myself from participation in this appeal. It would be a disservice to the public that elected me if I failed to participate in a case in which I am eligible to serve when I have no bias or prejudice that would prevent me from doing so.

II
Plaintiff also asks that there be an evidentiary hearing on the motion for recusal. I would not be opposed to holding an evidentiary hearing on plaintiff's motion, were there allegations against me that required fact-finding. But there are none. Given the nature of the allegations supporting plaintiff's request for my recusal, *267 such a hearing is not necessary for me to decide whether I should participate in this case. Plaintiff's allegations that amicus, the Michigan Chamber of Commerce, contributed to my campaign for reelection and aired advertisements supporting my reelection are well-established on the public record and are not in dispute. Thus, an evidentiary hearing would not provide any additional information to assist me in deciding whether to participate in the case.

III
Plaintiff's motion for recusal presents an opportunity to address Michigan's current system of selecting justices, which combines statewide elections and appointments by the Governor to fill vacancies. A full term of office is eight years, and a justice may run for reelection. When a justice leaves office before his or her term expires, the Governor appoints a new justice to fill the vacancy. The Governor's power of appointment to fill vacancies is absolute and unchecked. The newly appointed justice must then run in the next election for the remainder of the predecessor's term. Because the terms of justices are staggered, and because justices appointed to fill vacancies must run for the remainder of the term, there is a statewide election for Supreme Court every two years.
Increasingly large sums of money have been raised for and spent by the candidates' campaigns and/or independent political action committees. During the years from 1994 to 2000, the amounts contributed to the candidates nominated by the two major parties and the independent expenditures by the political parties and political action committees have risen sharply. The total amount spent on Supreme Court elections has gone from $1,339,842 in 1994 to at least $16 million estimated in 2000a 12-fold increase in just 6 years.[6]
Michigan's method of selecting Supreme Court justices has rightly come under intense scrutiny since the 2000 electionthe most expensive and rancorous for the judiciary in state history. In my opinion, the escalating cost and rhetoric of Michigan Supreme Court justice campaigns have not served to better inform the electorate regarding the qualifications of the candidates. Spending $16 million or more in a Supreme Court campaign is unseemly, wasteful, and ultimately damaging to the public's trust and confidence in the Supreme Court, and therefore, the judiciary. The judiciary cannot afford to be perceived by the public as "bought and paid for." A system that allows and encourages the expenditure of huge amounts of money on Supreme Court elections needs reconsideration.
I have been elected and reelected to the judicial bench seven times: three times to the probate court, twice to the Court of Appeals, and twice to the Supreme Court. While I find the challenges of the campaign process invigorating, my campaign experiences have revealed the inherent problems in our current system. Indeed, in each of my campaigns I emphasized the importance of voting the "nonpartisan ballot," because so many citizens I met were unfamiliar with judicial candidates and even the fact that judges and justices are *268 both appointed and elected. Over two years ago when I was Chief Justice, I proposed for exploration a modified version of the federal plan for selecting Michigan Supreme Court justices. I continue to develop and consider plans for an alternative selection system for Michigan Supreme Court justices.
To ensure the independence of the Court and to better inform the public about the process, it is time to initiate a public dialogue regarding the method by which Michigan Supreme Court justices are selected. A first step in this process should be the creation of a commission to study the possible methods of selecting Michigan Supreme Court justices. A commission would generate ideas that can improve our current system and educate the public about options. I urge the Governor, the Legislature or the Michigan Supreme Court, or any combination of these branches of government, to form a commission to study and report on the important issue of the selection of Michigan Supreme Court justices, which is vital to the well-being of the judiciary.

APPENDIX A: The Full Text of the Allegations Requesting My Removal
14. In the fall of 2002, the Michigan Chamber of Commerce provided substantial benefit to the campaigns of Justices Young and Weaver, publicly airing advertisements which advocated the election of these Justices.
15. These advertisements and campaign benefits were made about the same time as the Michigan Chamber of Commerce filed its Amicus Curiae Brief in support of its member, Defendant Daimler Chrysler, in this case.
16. In short, the Michigan Chamber, which had no prior involvement in this case, filed its Amicus Brief in support of

APPENDIX A: The Full Text of the Allegations Requesting My RemovalContinued
Defendant Daimler Chrysler and, at about the same time, publicly financed the campaigns of Justices Young and Weaver.
17. There is no indication in the Order of April 8, 2003 that Justices Young or Weaver recused themselves from considering the requests of their campaign benefactor, the Michigan Chamber of Commerce.
18. Plaintiff respectfully submits that Justices Young and Weaver should recuse themselves from further involvement in this appeal:
a. For these Justices to participate in this appeal on its substantive merits, with the involvement of the Chamber, their principal campaign contributor, would minimally present the appearance of impropriety;
b. The payments for the benefit of these Justices give rise to bias or prejudice favorable to the Chamber and its member, Defendant Daimler Chrysler;
c. For these Justices to participate would present a probability of actual bias that is too high to be constitutionally tolerable.

* * *
27. This is the first case known to the undersigned in which the Michigan Chamber of Commerce has appeared as Amicus Curiae after making the campaign contributions and payments for the 2000 and 2002 campaigns referred to above.

APPENDIX B: Proposed Amendments to Michigan Court Rule 2.003
(C)(5) Disqualification of a justice. If a justices participation in a case is challenged by a written motion or if the issue of participation is raised by the justice or another justice, the challenged justice shall decide the issue and publish in the record *269 of the case his or her reasons for the decision to participate or not.
(D)(2) Procedure for a justice. If it appears that there may be grounds or possible grounds for disqualification, the justice may have the clerk of the supreme court send the parties the justices written explanation of the grounds or possible grounds for disqualification, and ask the parties and their attorneys to consider whether to waive any disqualification. If, following disclosure of any grounds or possible grounds for disqualification other than personal bias or prejudice concerning a party, the parties all notify the clerk of the supreme court in writing that the justice should not be disqualified, and the justice is then willing to participate, the justice may participate in the case. *270 Appendix C: Contributions and Independent Expenditures in Supreme Court Elections, 1994-2002

-------------------------------------------------------------------------
 1994 Supreme Court Election
-------------------------------------------------------------------------
Candidate Amount contributed Independent Expenditures on
 to campaign behalf of candidate
-------------------------------------------------------------------------
Shelton $ 519,901 $ 16,281
-------------------------------------------------------------------------
Mallett $ 374,101 $ 34,387
-------------------------------------------------------------------------
Griffin $ 198,178 $ 0
-------------------------------------------------------------------------
Weaver $ 196,995 $ 0
-------------------------------------------------------------------------
-------------------------------------------------------------------------
 1996 Supreme Court Election
-------------------------------------------------------------------------
Candidate Amount contributed Independent Expenditures on
 to campaign behalf of candidate
-------------------------------------------------------------------------
Gage $ 723,570 $ 477,962
-------------------------------------------------------------------------
Murphy $ 699,354 $ 367,924
-------------------------------------------------------------------------
Kelly $ 553,274 $ 123,649
-------------------------------------------------------------------------
Brickley $ 228,977 $ 223,697
-------------------------------------------------------------------------
-------------------------------------------------------------------------
 1998 Supreme Court Election
-------------------------------------------------------------------------
Candidate Amount contributed Independent Expenditures on
 to campaign behalf of candidate
-------------------------------------------------------------------------
Corrigan $ 1,033,339 $ 30,780
-------------------------------------------------------------------------
Taylor $ 986,566 $ 6,572
-------------------------------------------------------------------------
Borman $ 663,183 $ 19,256
-------------------------------------------------------------------------
Youngblood $ 592,297 $ 6,890
-------------------------------------------------------------------------
Cavanagh $ 255,073 $ 6,890
-------------------------------------------------------------------------
Collins $ 202,163 $ 6,572
-------------------------------------------------------------------------
-------------------------------------------------------------------------
 2000 Supreme Court Election
-------------------------------------------------------------------------
Candidate Amount contributed Independent Expenditures on
 to campaign behalf of candidate
-------------------------------------------------------------------------
Taylor $ 1,332,975 $ 522,627
-------------------------------------------------------------------------
Young $ 1,292,192 $ 538,885
-------------------------------------------------------------------------
Markman $1,244,502 $ 497,073
-------------------------------------------------------------------------
Robinson $ 1,195,683 $ 9,748
-------------------------------------------------------------------------
Thomas $ 1,008,420 $ 9,748
-------------------------------------------------------------------------
Fitzgerald $ 750,539 $ 9,748
-------------------------------------------------------------------------

*271
-------------------------------------------------------------------------
 2002 Supreme Court Election
-------------------------------------------------------------------------
Candidate Amount contributed Independent Expenditures on
 to campaign behalf of candidate
-------------------------------------------------------------------------
Young $ 622,413 $ 10,842
-------------------------------------------------------------------------
Weaver $ 280,440 $ 1,958
-------------------------------------------------------------------------
Drake $ 44,025 $ 7,797
-------------------------------------------------------------------------
Brennan $ 11,549 $ 10,093
-------------------------------------------------------------------------

These figures are taken from Special Interests v. Public Values: Funding Michigan Supreme Court Campaigns, 1994-2000, Michigan Campaign Finance Network; A Citizen's Guide to Michigan Campaign Finance-2002, Michigan Campaign Finance Network; and Sanchez, Samantha, Campaign Contributions and the Michigan Supreme Court, The National Institute on Money In State Politics, .
Independent expenditures are expenditures made by the political parties and political action committees on behalf of a candidate.
NOTES
[1] Gilbert v. Daimlerchrysler Corp., 468 Mich. 883, 661 N.W.2d 232 (2003).
[2] In my statement of disqualification in In re JK, 468 Mich. 202, 661 N.W.2d 216 (2003), I proposed for public comment amendments to Michigan Court Rule 2.003. For the full text of my proposed amendments, see Appendix B. These amendments would provide that in a case such as this, when the issue of disqualification is raised, a justice should publish in the record of the case the reasons for his or her decision to participate or not participate in the case.

I continue to believe that publishing the reasons for one's decision on whether or not to participate in a case would better inform the public. I have therefore followed this procedure and placed my response to plaintiff's motion for recusal on the record.
[3] See Appendix A for the full text of plaintiff's allegations requesting my recusal.
[4] This amount was less than half the maximum limit of $34,000. Special Interests v Public Values: Funding Michigan Supreme Court Campaigns, 1994-2000, The National Institute on Money In State Politics, .
[5] A Citizen's Guide to Michigan Campaign Finance, 2002, Michigan Campaign Finance Network, The National Institute on Money In State Politics. .
[6] These figures are taken from Special Interests v Public Values: Funding Michigan Supreme Court Campaigns, 1994-2000, Michigan Campaign Finance Network and Sanchez, Samantha, Campaign Contributions and the Michigan Supreme Court, The National Institute on Money In State Politics, . See Appendix C for the campaign contributions for the 1994, 1996, 1998, 2000, and 2002 campaigns. The total amount spent in the elections cannot be known exactly because advertisements run in opposition to various Supreme Court candidates are not regulated by M.C.L. § 169.206(2).