The respondent-appellee’s motion for a stay of proceedings is denied.
This Court previously determined in this case that the First Amendment of the United States Constitution does not bar the application of the Michigan Rules of Professional Conduct to statements made by respondent-attorney Geoffrey Fieger in the course of a pending lawsuit in the Court of Appeals. Specifically, Mr. Fieger stated that he “declared war upon” the judges hearing his lawsuit, that such judges could “kiss his ass,” that his client should “shove [his finger] up their asses,” that they were “three jackass Court of Appeals judges,” that “the only thing that’s in their ‘endo’ should be a large plunger about the size of my fist,” and that the judges had “changed their name from Adolf Hitler and Goebbels, and — what was Hitler’s [mistress] — Eva Braun.”
Such statements were determined to be in violation of MRPC 3.5(c) (which prohibits undignified or discourteous conduct by an attorney toward the court) and MRPC 6.5(a) (which requires an attorney to treat with courtesy and respect all persons involved in the legal process). As a result, in accordance with an agreement entered into between Mr. Fieger and the Attorney Grievance Commission, he is to be reprimanded but allowed without limitation to continue his practice of law.
We are now confronted with Mr. Fieger’s motion that this Court “stay” its judgment pending his application for certiorari with the United States Supreme Court. Such “stay” would delay the implementation of the Attorney Grievance Commission’s order of reprimand.
This Court may grant a “stay” of its judgments pending applications for certiorari when “irreparable injury would be suffered by the failure” to do so. Red Star Motor Drivers Ass’n v Detroit, 236 Mich 422, 424-425 (1926). That such a “stay” is truly extraordinary is reflected by the fact that we can identify only a single case over the past two decades in which such a stay has been granted by this Court. Romein v Gen Motors Corp (Docket No. 83830), December 27, 1990. Rather, it is almost always the case that the judgments of this Court, as with those of every other supreme court in the Union, are not “stayed” pending applications for United States Supreme Court review, in part because of the rarity of that Court granting such review.
Despite the arguments of our dissenting colleagues, Mr. Fieger’s motion must be denied simply because there is no evidence whatsoever that he would suffer any “irreparable injury” by this Court’s failure to grant a “stay.” He can continue to practice law during his application for certiorari and, if he prevails in the United States Supreme Court, his reprimand will be undone. This is not a hard case or a close call, in our judgment.
In light then of this Court’s very clear historical practice — that is, granting “stays” under only the most truly extraordinary circumstances — we can only observe with wonderment the dissenters’ impassioned arguments that the present case involves such circumstances.
This Court (including without exception the dissenting justices) has not granted “stays” when persons were incarcerated in prison pending *1229 United States Supreme Court review; it has not granted “stays” when persons’ fortunes and properties were at stake pending such review; it has not granted “stays” when the interpretation of laws and constitutions was in controversy pending such review; and it has not granted “stays” even when matters of child custody and parental termination were in dispute pending such review. Yet, the dissenting justices insist that we must grant this almost unprecedented relief in the instant case in which they have barely labored to demonstrate any “irreparable injury.” It is not this majority that must demonstrate why the law should not be applied in its normal fashion, but the dissenters that must demonstrate why the law should be applied, as they propose, in an abnormal fashion.
Finally, concerning the various proposals offered by the dissenting justices for resolving judicial disqualification motions — a majority of which have come from respondent in recent years — we do not believe that all such proposals are necessarily unreasonable, merely that it is also not unreasonable to continue to abide by disqualification procedures that have been followed in this Court since its inception, that obtain within the overwhelming number of state judiciaries — as well as within the federal courts and the United States Supreme Court — and that have been abided by each of the dissenting Justices themselves for periods of between ten and twenty-four years on this Court without apparent previous concern.