# Order

**Michigan Supreme Court**
**Lansing, Michigan**

March 6, 2007

132975 & (43)

Clifford W. Taylor,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman,
Justices

PEOPLE OF THE STATE OF MICHIGAN,
          Plaintiff-Appellant,

v                                                          SC: 132975
                                                           COA: 273560
                                                           Wayne CC: 06-100051-01
                                                           36th DC:  D06-55281; D06-55282

TODD EMERSON PARSONS,
          Defendant,

and

GABRIEL JOHN SEIBT,
          Defendant-Appellee.

_____/

On order of the Court, the motion for immediate consideration is GRANTED, and we further ORDER that district and circuit court proceedings are stayed pending the completion of this appeal.  The application for leave to appeal the October 24, 2006 order of the Court of Appeals remains pending.

WEAVER, J., concurs and states as follows:

I concur with the order to stay trial court proceedings in this case and write separately to state again that a justice has a duty to supply the public, and thereby future litigants, with his or her reasons for nonparticipation.  As I wrote almost two (2) years ago (in 2005) in *Scalise v Boy Scouts of America*, 473 Mich 853, 854 (2005) (Weaver, J., dissenting):

> Const 1963, art 6, § 6, which states that "Decisions of the supreme court . . . shall be in writing and shall contain a concise statement of the facts and reasons for each decision . . ." requires that justices give written reasons for each decision.[1]  There is no more fundamental purpose for the requirement that the decisions of the Court be in writing than for the

---

[1] Article 6, § 6 of the 1963 Michigan Constitution states, in full:

> Decisions of the supreme court, including all decisions on prerogative writs, shall be in writing and shall contain a concise statement of the facts and reasons for each decision and reasons for each denial of leave to appeal.  When a judge dissents in whole or in part he shall give in writing the reasons for his dissent.

decisions to be accessible to the citizens of the state. Because a justice's decision to not participate in a case can, itself, change the outcome of a case, the decision is a matter of public significance and public access and understanding regarding a justice's participation or nonparticipation is vital to the public's ability to assess the performance of the Court and the performance of the Court's individual justices. Thus, the highest and best reading of art 6, § 6 requires that a justice's self-initiated decision not to participate, or a challenged justice's decision to participate or not participate, should be in writing and accessible to the public.

As I stated in my December 21, 2006, dissent to the order denying the motion for stay in *Grievance Administrator v Fieger,* 477 Mich 1228 (2006), I first raised the issue of justice recusal almost four (4) years ago when, in *In re JK,* 468 Mich 202 (2003) (a termination of parental rights and reversal of adoption case, not involving attorney Geoffrey Fieger), I had reason to examine the rules governing my own participation in that case:

> During the consideration of *In re JK*, I was informed that unwritten "traditions" governed the decision and that, MCR 2.003 the court rule concerning disqualification of all other Michigan judges, did not apply to justices of the Michigan Supreme Court. I was further informed that it was a "tradition" of the Court that the decision whether a justice would disqualify himself or herself was left to the individual justice and that no reasons for the decision whether to participate or not participate in a case were to be given.
>
> I concluded that these unwritten traditions and the unfettered discretion violate Michigan's Constitution, which requires justices to give written reasons for each decision, including a decision to participate in or be disqualified from a case.[2]
>
> Because the Court's traditions were clearly inadequate, in *In re JK, supra,* I followed the remittal of disqualification procedure provided by MCR 2.003(D). In light of my understanding of the requirements of Const 1963, art 6, § 6, I also provided an explanation in writing of my decision not to participate and asked that the Court open an administrative file to explore the rules that should govern justice disqualification decisions.[3] [*Fieger, supra* at 1240.]

---

[2] Const 1963, art 6, § 6, *supra*, n 1.

[3] In my statement of nonparticipation in *In re JK, supra*, I also proposed for public comment amendments of MCR 2.003 that would require that a justice publish in the record of the case the reasons for the decision to participate or not participate in the case when the issue of disqualification was raised by a party, the justice himself or herself, or

Thus, any assertion that my position on justice recusals is new, or began with attorney Fieger's motion to disqualify "the majority of four" (then Chief Justice Corrigan and Justices Taylor, Young, and Markman) is incorrect.

It is important to note that attorney Fieger initially moved to disqualify me, as well as "the majority of four." Then, when I denied the motion with written reasons for my decision not to recuse myself, attorney Fieger made no further disqualification motions against me, although attorney Fieger has continued to make disqualification motions against "the majority of four." See *Gilbert v DaimlerChrysler Corp*, 469 Mich 883, 889 (2003) (Weaver, J., participating in part and voting to grant reconsideration in part).

It is also untrue that my position on justice recusals has only been directed toward Chief Justice Taylor and Justices Corrigan, Young, and Markman. I have, in fact, raised the issue of the importance of providing the reasons for nonparticipation to Justice Cavanagh, most recently in *White v Hahn*, ___ Mich ___ (2007) (Docket No. 132191), a case in which Justice Cavanagh's daughter represents one of the parties.[4]

In *Hahn, supra,* I noted that Justice Cavanagh had not included his reason for recusal, but had informed me he would do so in future cases. Further, Justice Kelly has also indicated to me that in the future, she will request that her reasons for not participating be included with her decisions on the orders. Thus, obviously, contrary to assertions of a concurring justice, I have taken up my position on justice recusals with Justices Cavanagh and Kelly. As noted above, I have publicly raised this issue since 2003 by my statement in *In re JK, supra.*

At present there is no sufficient system in place in this Court for providing to justices adequate notice of justice recusals. Given the current "helter-skelter" approach to handling justice recusal decisions, it is unreasonable to expect that any justice would

---

another justice. I further outlined the procedure for a justice to raise his or her potential disqualification with the parties and their attorneys. See *In re JK, supra,* 220-221 (Weaver, J., nonparticipation statement).

[4] See *Hahn*, *supra*:

> Weaver, J., (*concurring*). I concur in the order of denial and note that Justice Cavanagh has properly supplied to the justices and staff his reason for his decision not to participate in this case because his daughter, Megan Cavanagh, represents the defendant, Robert Hahn. However, in this case, he has not, as required by Michigan Const 1963, art 6, § 6, requested that the reason for his decision be included with the order. I further note that Justice Cavanagh has informed me that in the future he will request that his reasons for not participating be included with his decisions on the orders. [*Hahn, supra,* ___ Mich ___ (2007).]

be able to identify all justice recusals. For instance, it is when a case appears on a conference agenda, or sometimes, but not always, on commissioner reports, that a justice has a reasonable opportunity to learn about a fellow justice's recusal from a case and to request that nonparticipating justice to provide written reasons for not participating.[5]

Further, other assertions by concurring justices are simply incorrect and untrue. For instance: my reliance on art 6, § 6 of the Michigan Constitution is not newfound or incorrect as evidenced by this very order, which is issued as a "decision of the Supreme Court," not just from one justice. Further, I have no proposal or "desire to abolish our elective system for justices and judges."[6]

A justice's decision to participate or not participate (recuse himself or herself) in a case implicates a bedrock principle of our judicial system—the impartiality of the judiciary. Without a record of a justice's reasons to not participate in a case, how can future litigants be guaranteed that the same reasons are not present in their cases? Moreover, how can the people of Michigan be sure that a justice is not simply refusing to work on a case to avoid some controversy that the case might involve—for example, a controversy that might call into question his or her impartiality on an issue or make reelection more difficult?

The impartiality of the judiciary preserves the ethics of judicial administration, protects decision-making, and ensures the public's, and thereby future litigants', trust and confidence in the judiciary. Thus, preserving the impartiality of the Court is "real work of the Court."

What are needed are clear, fair, enforceable, written, and published rules concerning the participation, nonparticipation, or disqualification of justices. Such rules would enhance the accountability of justices to the public. They would provide a way for the public to have some knowledge about how justices conduct the public's business so that the public could accurately assess the justices' performance of their duties.

---

[5] In addition, when justice "non-hold memos" associated with orders scheduled to enter are received monthly in large batches, with sometimes less than a week before the scheduled entry date, a justice does not have a reasonable opportunity to learn about a fellow justice's recusal from a case.

[6] My revised proposal for the 2007-2008 election cycle to reform and improve, not abolish, the present system of election and appointment of justices, along with reform of term limits for justices, will be published on my personally funded website, <www.justiceweaver.com>, this year, 2007. My similar proposal to reform and improve, not abolish, the election and appointment of justices for the 2005-2006 election cycle was circulated in 2005-2006.

Further while it appears to continue to be for <u>some</u> justices a "tradition" of this Court for a justice who disqualifies himself or herself from a case to not give written reasons, it is a "tradition of secrecy" that must for <u>all</u> justices end now. An impartial judiciary is "ill served by casting a cloak of secrecy around the operations of the courts . . . ."[7]

YOUNG, J., concurs and states as follows:

I concur in the order, but write solely to illustrate for the public the inconsistency of Justice Weaver's newfound desire for openness on this Court.

Until recently, Justice Weaver was fully content to follow the traditions of this Court. In fact, as Justice Weaver concedes, she has declined to participate in more than 250 cases and refused to publicly disclose her reasons for doing so. See *Advocacy Org for Patients & Providers v Auto Club Ins Ass'n*, 472 Mich 91, 97 n 1 (2005) (Weaver, J., concurring). Yet, contrary to the tradition of this Court and *her* personal practices, Justice Weaver *now* contends that a justice must explain why he or she chooses to recuse in a particular case. Her ostensible justification for her new position is Const 1963, art 6, § 6, which requires that "[d]ecisions of the supreme court . . . be in writing and . . . contain a concise statement of the facts and reasons for each decision . . . ." Our disqualification practice requires that each justice assess whether it is appropriate to sit in a particular case. Thus, the decision whether to sit is one made only by that justice and is not a "decision of the supreme court" within the meaning of Const 1963, art 6, § 6. It should be stressed that until recently, Justice Weaver never believed that this constitutional provision applied to recusal decisions. Justice Weaver's own longstanding practice (in which she declined to state her reasons for self-disqualification) was not only consistent with the Court's historic disqualification practice but with the constitution as well.

Most significant about Justice Weaver's novel reliance on this constitutional provision is her selective application of this provision to her colleagues. Her newfound "constitutional mandate" apparently does not bind Justices Kelly and Cavanagh. In *Reed v Breton*, 475 Mich 531 (2006), *Kakish v Dominion of Canada Gen Ins Co,* 476 Mich 854 (2006), and *Smith v Smith,* 474 Mich 1091 (2006)—all recent cases in which Justice Cavanagh disqualified himself from participation without disclosing his reasons—Justice Weaver made no complaint that he violated the constitution for failing to do so. Similarly, when Justice Kelly declined to participate in *Sahr v Wal-Mart Stores, Inc*, 477 Mich ___ (2006), *Beckes v Detroit Diesel Corp,* 475 Mich 878 (2006), and *People v Mox,* 475 Mich 867 (2006), without stating her reasons, again Justice Weaver made no demand for disclosure on Justice Kelly, nor did she claim that Justice Kelly's silence implicated "the impartiality of the judiciary." Certainly, if the failure to disclose the reasons for

---

[7] *Scott v Flowers*, 910 F2d 201, 213 (CA 5, 1990).

recusal casts "a cloak of secrecy" around the Court, as Justice Weaver now claims, then her demands ought to be applied uniformly.

Only in response to this statement has Justice Weaver *ever* challenged a recusal decision of Justice Cavanagh or Justice Kelly. She cites the pending case of *White v Hahn*, Docket No. 132191, in support of her evenhanded application of her novel constitutional mandate. However, even her explanation of her position in *Hahn* belies her claim of uniformity. Justice Weaver pronounces that Justice Cavanagh's recusal meets her standard of "public disclosure" because Justice Cavanagh *privately* disclosed to members of the Court his reasons for refusing to participate in the case. One will search the public record of this Court in vain for a public explanation why Justice Cavanagh and Justice Kelly have chosen to disqualify themselves in any other particular cases. But more important to this discussion, one will also search in vain to find a statement from Justice Weaver commenting on their failure to state publicly their reasons for recusal.

Because Justice Cavanagh and Justice Kelly have been following the traditions of this Court in recusal matters, there is no reason to criticize them. However, Justice Weaver ought to explain why she fails to apply her rules to all justices of this Court. Justice Weaver makes no real effort to explain the inconsistency of the demands she places upon Chief Justice Taylor, Justices Corrigan and Markman, and me and those she places (or refuses to place) on Justices Cavanagh and Kelly.[8]

It is well past time for Justice Weaver to end her siege and begin to again devote her energies to the work of this Court rather than the destruction of her colleagues and the reputation of this Court.

CORRIGAN, J., not participating, states as follows:

The current act in the theater of the Michigan Supreme Court puts me in mind of Zero Mostel's rendition of the song "Comedy Tonight"[9]:

Something familiar,
Something peculiar,

---

[8] Justice Weaver's suggestion that she is unable to monitor the justices' recusal decisions because the process is too "helter-skelter" is simply untenable. Every order of this Court is distributed to all of the justices well in advance of its publication. Furthermore, despite the alleged "helter-skelter" nature of the process, Justice Weaver's watchful eye has yet to overlook an instance where Chief Justice Taylor, Justices Corrigan and Markman, and I have declined to participate.

[9] Music and lyrics by Stephen Sondheim, from the play "A Funny Thing Happened on the Way to the Forum."

Something for everyone:
A comedy tonight!

Something appealing,
Something appalling,
Something for everyone:
A comedy tonight!

*  *  *

No royal curse, no Trojan horse,
And a happy ending, of course!
Goodness and badness,
Panic is madness—
This time it all turns out all right!
Tragedy tomorrow,
Comedy tonight!

At our conference on January 31, 2007, I declared myself not participating in this case and further declined to give a statement of reasons for nonparticipation, as is the traditional practice of our Court. Justice Weaver then declared that she would issue a statement opposing my decision not to furnish reasons; her doing so will delay the disposition of this case. Accordingly, I feel compelled to disclose my reasons for nonparticipation in the interest of a speedy disposition of this apparent emergency.

My beloved son, Daniel Corrigan Grano, is a third-year law student and, at age 25, a city councilman who has, believe it or not, political aspirations. Dan also works as a law clerk at the small, excellent firm of Flood, Lanctot, & Connor, the lawyers who are defending the Parsons case. I do not know on what cases Dan performs legal research, nor am I aware that any screening is occurring in the law firm regarding his assignments. Thus, he may well have worked on this case, and we may well have discussed this very case at the dinner table, not realizing that it would ultimately come before this Court. Thus, I am not comfortable in sitting in this case. Lest there be any doubt, however, I am totally, completely, 100 percent biased and prejudiced in favor of my son Daniel. I have been since he was just a gleam in his father's eye, and I plan to hug him no matter how old he gets! (He is also very handsome!)

I have not participated in the substantive merits of this case. I initially declined to furnish my reasons so as not to either embarrass my son or afford unearned publicity to him or his law firm. It does not take hundreds of pages or complex rules of

disqualification to understand that a mother should not judge a case involving her son.[10] And restraint of speech on the subject is just sensible.

Justice Weaver has forced my hand in the interests of her own agenda. I now say to her, as she herself once liked to say, "Let's cut the comedy."[11] Betty, can't we stop wasting the taxpayers' money on this frolic and detour? Or are you determined to continue these theatrics, hoping that public opinion will somehow support your desire to abolish our elective system for justices and judges? Whatever your goal, this low comedy of your making can only end in tragedy: the public's loss of respect for this Court and for our state's judicial branch.

All seven of us are fortunate to be sworn to deliver on the promise of ordered liberty to the people of Michigan. That is what we have been doing to the best of our abilities. I again call on Justice Weaver, my one-time friend and still colleague, to rejoin the fold of ordinary mortals with the other six of the people's justices, doing the people's important work. As I have told Justice Weaver, I am praying—as are many others of our fellow citizens—for her personally and for her to put an end to this sad and low-comic chapter in our Court's history. We should do what mere mortals do—forgive our trespasses against one another so we can execute our sworn duty and deliberate together.

---

[10] I continue to approve the holding and analysis set forth in *In re Haley*, 476 Mich 180 (2006). As my statement makes clear, I am not recusing myself because of any *appearance* of bias, but because of the distinct likelihood that I have extrajudicial knowledge of this very case.

[11] Investiture of Justice Weaver, remarks by then-Judge Corrigan, Michigan Reports, Michigan Supreme Court Historical Society, Index to Special Sessions, p 159.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

March 6, 2007

_Corbin R. Davis_

Clerk

p0306