# Order

**Michigan Supreme Court**
**Lansing, Michigan**

April 6, 2007

130456

Clifford W. Taylor,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman,
Justices

STATE AUTOMOBILE MUTUAL
INSURANCE COMPANY,
          Plaintiff-Appellant,

v

GEOFFREY N. FIEGER, FIEGER,
FIEGER & SCHWARTZ, P.C., and
FIEGER, FIEGER, SCHWARTZ &
KENNEY, P.C.,
          Defendants-Appellees.
_____/

SC: 130456
COA: 254461
Wayne CC: 03-319297-CZ

On order of the Court, the application for leave to appeal the November 8, 2005 order of the Court of Appeals is considered and, pursuant to MCR 7.302(G)(1), in lieu of granting leave to appeal, we VACATE the November 8, 2005 order of the Court of Appeals and AFFIRM the Wayne Circuit Court order dismissing plaintiff's case for different reasons.

State Automobile Mutual Insurance Company ("State Auto") provided uninsured motorist benefits to John Rogers, who was killed in an automobile accident. State Auto had a judgment lien securing the $450,000 it paid to Rogers. Geoffrey Fieger represented Rogers's estate in a wrongful death action against the City of Detroit and obtained a jury verdict in favor of Rogers. After the appeals process was exhausted, the Wayne Circuit court issued an order disbursing the jury verdict. Pursuant to the January 9, 1999 order of the Wayne Circuit Court, Fieger was paid his costs of litigating the case for Rogers's estate and his attorney's fee. The order then allocated the remainder of the total award among Rogers's estate, State Auto, and a third lien holder, which is not a party to this appeal. Instead of awarding State Auto the full amount of its lien, the court discounted the amount State Auto was entitled to by one-third. Rogers's estate received the remainder of the verdict. Thereafter, State Auto brought an action in Oakland Circuit Court against Fieger, alleging conversion and breach of fiduciary duty. The circuit court held that summary disposition was inappropriate, but the Court of Appeals reversed, holding that summary disposition in favor of Fieger was proper because "the Oakland Circuit Court could not grant [State Auto] relief without effectively reversing or vacating

part of Wayne Circuit Court Judge Callahan's January 6, 1999 order." *State Auto Mut Ins Co v Fieger*, unpublished opinion per curiam of the Court of Appeals, issued February 14, 2003 (Docket No. 231590). The Court of Appeals then ordered State Auto to "commence an action for relief from judgment pursuant to MCR 2.612(C)(1)(f) in Wayne Circuit Court." *Id.*

State Auto did not appeal that decision to this Court. Instead, it brought the present action for relief from judgment. The Wayne Circuit Court dismissed State Auto's action. State Auto appealed, and the Court of Appeals issued a four-part order remanding the case to the Wayne Circuit Court for further fact-finding and more specific rulings. State Auto appealed to this Court, which, while retaining jurisdiction, remanded to the Wayne Circuit Court for further fact-finding. The Wayne Circuit Court has complied with that order, and this Court now vacates the order of the Court of Appeals and remands for summary disposition in favor of Fieger for the following reasons.

After this Court affirmed the verdict in favor of Rogers's estate in the original action, Fieger received a proper attorney fee based on the total recovery less costs. The remainder of the verdict was then divided between Rogers's estate and the lien holders. Fieger did not receive *any more* money from the verdict. Thus, the unrecovered portion of State Auto's lien inured to the benefit of Rogers's estate, not to Fieger. Therefore, the source of State Auto's loss is Rogers's estate, which is not a party to these proceedings. Therefore, albeit for different reasons, the Wayne Circuit Court properly dismissed this case.

In this case, defendant seeks a stay of proceedings until final disposition of pending federal litigation, wherein defendant initiated a lawsuit challenging the constitutionality of the Michigan Supreme Court recusal rule. See *Fieger v Ferry*, 471 F 3d 637 (CA 6, 2006).

In the recent past, defendant has filed numerous motions for the recusal of one or more Michigan Supreme Court Justices, either in his capacity as a party or as an attorney on behalf of his clients. Each of the prior motions for recusal has involved various allegations of claimed bias, principally stemming from Michigan Supreme Court judicial campaigns. All of the previous motions for recusal have been denied. *Graves v Warner Bros*, 469 Mich 853 (2003); *Gilbert v DaimlerChrysler Corp*, 469 Mich 883 (2003); *Harter v Grand Aerie Fraternal Order of Eagles*, 693 NW2d 381 (2005); *Grievance Administrator v Fieger*, 472 Mich 1244 (2005); *McDowell v City of Detroit*, 474 Mich 999 (2006); *Stamplis v St John Health Sys*, 474 Mich 1017 (2006); *Heikkila v North Star Trucking*, Inc, 474 Mich 1080 (2006); and *Lewis v St John Hosp*, 474 Mich 1089 (2006).

The pending motion to stay this case asserts no new basis for recusal. Rather, the motion is predicated entirely on allegations made in the previous eight motions that have been considered and denied.

As we have each done in connection with these past motions, and as Justices must do in connection with every motion for disqualification, we have each looked into our consciences in this case and concluded that we are able to accord fair, impartial and equal treatment to plaintiff's counsel and his clients.

Further, the motion is predicated on the erroneous notion that disqualification of a Justice of the Michigan Supreme Court is governed by the disqualification procedure set forth in MCR 2.003. On the contrary, this procedure has never been held applicable to disqualification of Justices. See, e.g., *Adair v State of Michigan*, 474 Mich 1027, 1043 (2006) (statement of Cavanagh, J.), 1029 n 2, (statement of Taylor, C.J., and Markman, J.); *In re JK,* 468 Mich 202, 220 (2003) (statement of Weaver, J.). Throughout its history, the disqualification procedure followed in the Michigan Supreme Court is similar to the one followed in the United States Supreme Court. See Statement of Recusal Policy, United States Supreme Court, November 1, 1993; *Laird v Tatum*, 409 US 824, 833, 837; 93 S Ct 7; 34 L Ed 2d 504 (1972); *Jewell Ridge Coal Corp v Local 6167*, 325 US 897; 65 S Ct 1550; 89 L Ed 2007 (1945) (Jackson, J., *concurring*).

There being no new asserted basis that would warrant a stay of proceedings, the motion is DENIED.

CAVANAGH and KELLY, JJ., would grant the motion for stay.

WEAVER, J., concurring in part and dissenting in part, states as follows:

I concur in the result only of the order vacating the November 8, 2005 order of the Court of Appeals and affirming the Wayne Circuit order dismissing plaintiff's case as the circuit court correctly decided this case on February 25, 2005, over two years ago.

I dissent from the participation of the majority of four, Chief Justice Taylor and Justices Corrigan, Young, and Markman in this case, where Mr. Geoffrey N. Fieger is a party. For my reasons in detail, see my dissent in *Grievance Administrator v Fieger,* 476 Mich 231, 328-347 (2006) (Weaver J., dissenting), and my dissent to the denial of the motion for stay in *Grievance Administrator v Fieger,* 477 Mich 1228, 1231-1271 (2006) (Weaver J., dissenting).

I also dissent from the order denying defendant's motion for stay of proceedings pending Mr. Fieger's lawsuit in the United States District Court for the Eastern District of Michigan concerning Michigan's disqualification rules governing Supreme Court justices. See *Fieger v Ferry*, 471 F3d 637 (CA 6, 2006). I would grant the motion to stay.

Furthermore, although MCR 2.003 is inadequate and in need of reform, which reform I have urged,[1] without success for almost 4 years, this Court to undertake action and achieve, the disqualification of justices is governed by the disqualification procedure contained in MCR 2.003. Although the majority of four asserts the contrary, the past four years have exposed inconsistencies in the standards that individual justices apply to themselves when making their decision to participate, or not to participate, in a case. At times the justices have applied the court rule governing the disqualification of judges, MCR 2.003, to themselves, and at times they have not.

For example, in *Adair v Michigan,* 474 Mich 1027, 1043 (2006), Chief Justice Taylor and Justice Markman stated that "[p]ursuant to MCR 2.003(B)(6), we would each disqualify ourselves if our respective spouses were participating as lawyers in this case, or if any of the other requirements of this court rule were not satisfied." Justice Young concurred fully in this legal analysis. *Id.* at 1053. Similarly, in *Grosse Pointe Park v Michigan Municipal Liability & Prop Pool,* 473 Mich 188 (2005), then-Chief Justice Corrigan used the remittal of disqualification process of MCR 2.003(D). At other times, however, the same justices have not followed the provisions of MCR 2.003. For example, in *Gilbert v DaimlerChrysler Corp,* 469 Mich 883, 889 (2003), then-Chief Justice Corrigan and Justices Taylor, Young, and Markman denied a motion for reconsideration of the Court's order denying the motion for disqualification and did not refer the motion to the State Court Administrator for the motion to be assigned to another judge for review de novo, as would be proper under MCR 2.003(C)(3).

Assertions that justices can continue to look into their consciences and conclude they are able to accord fair, impartial, and equal treatment to parties' counsel and clients without any independent check on justices' decisions are incorrect. This method is insufficient and inadequate to meet the due process rights of parties and their counsel. Further, while it appears to continue to be for *some* justices a "tradition" of this Court for a justice who disqualifies himself or herself from a case to not give written reasons, and to sometimes apply MCR 2.003 to himself or herself, and to sometimes not, it is a

---

[1] Since May 2003, I have repeatedly called for this Court to recognize, publish for public comment, place on a public hearing agenda, and address the need to have clear, fair, orderly, and public procedures concerning the participation or disqualification of justices. See, e.g., statements of Weaver, J., in *In re JK,* 468 Mich 202 (2003); *Gilbert v DaimlerChrysler Corp,* 469 Mich 883 (2003); *Advocacy Org for Patients & Providers v Auto Club Ins Ass'n,* 472 Mich 91 (2005); *McDowell v Detroit,* 474 Mich 999 (2006); *Stamplis v St John Health Sys,* 474 Mich 1017 (2006); *Heikkila v North Star Trucking, Inc,* 474 Mich 1080 (2006); *Lewis v St John Hosp,* 474 Mich 1089 (2006); *Adair v Michigan,* 474 Mich 1027 (2006); *Grievance Administrator v Fieger,* 476 Mich 231 (2006)*; Grievance Administrator v Fieger,* 477 Mich 1228 (2006); *People v Parsons,* Docket No. 132975 (2007); *Ruiz v Clara's Parlor,* Docket No. 130847 (2007); and *Neal v Dep't of Corrections,* 477 Mich ___ (Docket No. 130862, issued March 23, 2007).

"tradition of secrecy" and inadequacy that must for *all* justices end now. An impartial judiciary is "ill served by casting a cloak of secrecy around the operations of the courts . . . ."[2]

YOUNG, J., concurs and states as follows:

I concur with the order vacating the Court of Appeals order and affirming the Wayne Circuit Court's dismissal of this case. I write separately to address Justice Markman's discussion of the implications of the collateral source rule on this case. Because the direct beneficiary of the collateral source rule, the city of Detroit, has not been a part of this case for some time, and because applying the collateral source rule does not remedy the trial court's decision to reduce plaintiff State Automobile Mutual Insurance Company's (State Auto) lien, the collateral source rule is wholly irrelevant to the final disposition of this case.

The collateral source rule is designed to prevent double recovery by plaintiffs. After a trier of fact reaches a verdict for a plaintiff, the court must enter an order of judgment. MCL 600.6306(1). The judgment must contain a number of elements of damages, including "[a]ll past economic damages, less collateral source payments as provided for in section 6303." MCL 600.6306(1)(a). Section 6303 allows for "evidence to establish that [an] expense or loss was paid or is payable, in whole or in part, by a collateral source . . . ." MCL 600.6303(1). If the court determines that a portion of the past economic damages was paid by a collateral source, then the court must reduce the judgment by that amount. *Id.* However, payments subject to a statutory or contractual lien are not eligible for deduction as "collateral sources" under the statute. MCL 600.6303(4). This is because the amount due to the lien holder must still be paid.

After calculating the proper amount of the judgment, the court finds whether the attorney's contingent fee is "appropriate," by determining if the fee is one-third or less of "the *net sum recovered* after deducting from the amount recovered all disbursements properly chargeable to the enforcement of the claim or prosecution of the action." MCR 8.121(C)(1) (emphasis added). After subtracting the appropriate costs and attorney fee, the remainder of the judgment belongs to the plaintiff, subject to any liens. Therefore, any reduction in the liens inures to the benefit of the plaintiff, not his or her attorney.

In this case, defendant Geoffrey N. Fieger successfully represented the estate of John Rogers in a lawsuit against the city of Detroit for Rogers's wrongful death. Plaintiff State Auto was Rogers's insurer and had paid $450,000 in benefits. Pursuant to the insurance contract, State Auto had a right of reimbursement for any damages recovered by Rogers, up to the amount of the benefits paid. After the verdict in favor of Rogers, the city of Detroit sought to reduce the judgment by State Auto's payment. This Court held

---

[2] *Scott v Flowers*, 910 F2d 201, 213 (CA 5, 1990).

that even though Fieger did not provide the proper statutory notice of the verdict to the lien holders, the trial court did not abuse its discretion by extending the period for lien holders to assert their rights. *Rogers v Detroit*, 457 Mich 125, 156-157 (1998). Therefore, on remand, the Wayne Circuit Court refused to allow the city a setoff for State Auto's insurance payments in the judgment. After the city paid the judgment, the court allowed Fieger to deduct his costs and attorney fee pursuant to the contingency fee contract between Rogers and Fieger. See MCR 8.121(C)(1). The remaining amount was Rogers's, subject to the liens. Instead of allowing the lien holders to recover the full amount of their liens, the court reduced them by one-third, increasing *Rogers's recovery*. Fieger could not benefit from the reduction in State Auto's recovery because he already received his attorney fee.

Justice Markman apparently disagrees with this Court's decision in *Rogers* regarding the collateral source rule, arguing that State Auto's payment was in fact a collateral source. I fail to see how overruling that holding would affect the disposition of *this case* in any way. If State Auto's payment was a collateral source, then the court would have reduced the judgment against the city of Detroit by $450,000. The court would have then allowed Fieger to deduct his costs and attorney fees. The remaining amount would have been distributed among the lien holders and Rogers (assuming that State Auto would not lose its right to recovery under MCL 600.6303(3)). If the court again reduced the liens by one-third, State Auto would still only recovery $300,000.[3] Justice Markman is correct that Fieger's attorney fee would be reduced by $150,000 under this scenario; however, the beneficiary of that reduction would have been the city of Detroit, not State Auto.[4]

The collateral source rule does not advance State Auto's theory that Fieger was the beneficiary of the $150,000 reduction of its lien. The only party that benefited from that reduction was Rogers.

---

[3] Justice Markman questions why a court applying the collateral source rule would reduce the liens by one-third. The majority's order holds that the source of State Auto's loss is the *Rogers, supra,* trial court's decision to reduce State Auto's lien to the benefit of Rogers. Justice Markman believes that the source of State Auto's loss was the trial court's decision not to apply the collateral source rule, even though this Court explicitly held that the trial court "properly ruled concerning the collateral source rule." *Rogers* at 157. Justice Markman fails to acknowledge that regardless of the proper application of the collateral source rule, the trial court's decision to reduce the lien by one-third caused State Auto's loss. The collateral source rule does not affect that decision.

[4] Fieger did "benefit" from the larger recovery, but he did not benefit at State Auto's expense. The larger recovery caused a loss to the city of Detroit. As noted in the previous footnote, the only way to make State Auto whole is to reduce the final disbursement to Rogers by the total amount of State Auto's lien.

MARKMAN, J., concurs and states as follows:

Although I concur with the dismissal of this complex dispute, I respectfully disagree with the Court's order, which states that defendant received a "proper attorney fee based on the total recovery less costs."

The collateral source rule, MCL 600.6303(1), requires a court to determine whether any damages have been paid by a collateral source, such as an insurance company, and, if so, to reduce a judgment by the amount that has been paid by the collateral source. This rule operates to reduce the amount of money an attorney representing a plaintiff on a contingent fee basis will recover. This is because an attorney working for a contingent fee is entitled to a percentage of the judgment; however, if the "judgment" is reduced as it is under the collateral source rule, the contingent fee will necessarily be reduced as well.

The instant dispute presents a significant issue under MCL 600.6303(1) – where there has been a payment from a collateral source, should a contingent attorney fee be calculated on the basis of the judgment or on the basis of the judgment less the collateral source payment? On the one hand, plaintiff's attorney can fairly be said to be responsible for the recovery of the entire judgment and entitled to his contractual share; on the other hand, that portion of the judgment embodying the collateral source payment presumably has already been made available to the plaintiff and thus plaintiff cannot be said to have been enriched to that extent by his attorney's efforts. To allow an attorney to recover a contingent fee based on the judgment, rather than the judgment less the collateral source payment, would effectively require plaintiff to pay more than the contingency percentage of the amount by which he has benefited from the judgment.

In MCL 600.6303(1), the Legislature seems to have determined that a contingent fee should not be calculated on the portion of a judgment already paid from a collateral source. Therefore, the trial court in the instant case erred by not reducing plaintiff's judgment by the amount received from a collateral source. Because plaintiff's attorney in the underlying action (the defendant in the instant action) received an attorney fee based on the total judgment, rather than the judgment less the amount received from a collateral source, he did not receive a "proper attorney fee," as the majority asserts.

Plaintiff here sues defendant to recover $150,000 that plaintiff alleges defendant improperly received as an attorney fee in an earlier case. In that case, plaintiff held a $450,000 lien on a judgment because of uninsured motorist benefits that it had paid to the original plaintiff. After the Wayne Circuit Court distributed approximately $300,000 to plaintiff from the judgment, plaintiff filed a complaint against defendant in the Oakland Circuit Court, alleging that defendant improperly received the missing $150,000 as an attorney fee. The Oakland Circuit Court held that the complaint could proceed in that

forum. However, on appeal from that holding, the Court of Appeals ruled that plaintiff had improperly filed the complaint in Oakland County and that it must instead commence an action for relief from judgment in Wayne County, where the original case had been tried. Plaintiff then filed suit against defendant in Wayne County. The Wayne Circuit Court dismissed the action, but the Court of Appeals ordered a remand to that court, and directed the trial court to rule on several issues. Plaintiff appealed to this Court, arguing that two of the issues raised had been decided previously in its favor, and hence constituted law of the case. This Court ordered a remand to the trial court to rule on two issues and retained jurisdiction. After the trial court held a hearing, the case returned to this Court.

MCL 600.6303(1) applies when: (1) the original plaintiff commenced a personal injury action to recover for economic loss and (2) a portion of that loss was paid by a collateral source. The original plaintiff here sought recovery for economic loss arising from the decedent's wrongful death in a car accident involving employees of the city of Detroit, and plaintiff paid $450,000 in uninsured motorist benefits to the original plaintiff. Therefore, § 6303(1) applies.[5]

Because MCL § 6303(1) applies in the instant case, the trial court should have reduced the judgment by the amount paid by the collateral source, i.e., plaintiff. In this case, however, the Wayne Circuit Court did not reduce the judgment by the amount paid by plaintiff. Consequently, defendant received an attorney fee based on the total judgment, rather than the judgment less the collateral source payment.

In his concurrence, Justice Young claims that "the collateral source rule is wholly irrelevant to the final disposition of this case," *ante* at 5, because Rogers, the plaintiff in the underlying case, not defendant, benefited from the failure to apply the collateral source rule. *Ante* at 6. I respectfully disagree. Because defendant received one-third of the total judgment, rather than one-third of the redefined judgment under MCL

---

[5] MCL 600.6303(4) provides, "'collateral source' means benefits received or receivable from an insurance policy . . . ." It also provides, "Collateral source does not include benefits paid by a person . . . or other legal entity entitled by contract to a lien against the proceeds of a recovery by a plaintiff in a civil action for damages, if the contractual lien has been exercised pursuant to subsection (3)." MCL 600.6303(3) provides, "Within 10 days after a verdict for the plaintiff, plaintiff's attorney shall send notice of the verdict by registered mail to all persons entitled by contract to a lien against the proceeds of plaintiff's recovery." Because the benefits were received from an insurance policy and the contractual lien was not exercised pursuant to subsection 3, i.e., notice was not sent within 10 days, plaintiff seems to be a "collateral source."

600.6303(1), it is clear that he benefited from the court's failure to apply the collateral source rule.[6]

Although defendant was improperly awarded an attorney fee, dismissal nonetheless seems warranted. The Court of Appeals decision expressly ordered plaintiff "to commence an action for relief from judgment pursuant to MCR 2.612(C)(1)(f)" in the Wayne Circuit Court. Because the Court of Appeals directed plaintiff to commence an action pursuant to this provision, plaintiff was obligated to comply with its procedures. MCR 2.612(C)(1) states that "[o]n motion and on just terms," a court "may relieve a party . . . from a final judgment, order, or proceeding." MCR 2.612(C)(1) requires plaintiff to file a "motion" in the underlying case. Yet, instead of filing a proper motion, plaintiff commenced an independent action against defendant. Plaintiff thus appears to have failed to comply with the order of the Court of Appeals. For this reason only, I concur with the result reached by this Court.

---

[6] Justice Young contends that "the source of State Auto's loss is the *Rogers* trial court's decision to reduce State Auto's lien to the benefit of Rogers." *Ante* at 6 n 3. I believe that the source of State Auto's loss is the trial court's decision to reduce State Auto's lien *and* the trial court's decision not to apply the collateral source rule. Had the trial court not made these two errors, State Auto would have received the $450,000 that it was owed and both Rogers and defendant would have received something less. Because the trial court's errors benefited both Rogers and defendant, State Auto did not err in seeking to recover from defendant.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

April 6, 2007

_Corbin R. Davis_

Clerk

d0403