# Order

**Michigan Supreme Court**
**Lansing, Michigan**

July 29, 2009

139203 & (3)

Marilyn Kelly,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway,
Justices

DAVID SCHOCK,
      Plaintiff,

v

SC: 139203

COURT OF APPEALS,
      Defendant.

_____/

On order of the Court, the motion for immediate consideration is GRANTED. The complaint for superintending control is considered, and relief is DENIED, because the controversy is moot, this Court having observed that oral argument in the Court of Appeals took place on July 14. We also note that the Court of Appeals granted Dr. Schock permission to have a camera in the attorney waiting room to "pool in" with the courtroom television camera manned by WOOD-TV, Channel 8.

WEAVER, J. (*concurring*).

I concur in and join the order granting immediate consideration and declaring the complaint for superintending control moot.[1]

I write further to provide the following as a matter of disclosure. I note that I know Mr. Schock personally, but I have had no past and have no present business relationship with him. I first met Mr. Schock in the fall of 2006 when I was an invited participant in the "You and the Courts" educational video that he and his company produced for Ottawa County. In February 2007, after the then "majority of four" (former

---

[1] Before this case became moot, I would have denied the complaint for superintending control because, under the court rules, this Court can only grant superintending control when the Court of Appeals has violated a clear legal duty. MCR 7.301(A)(6). In this case, under Administrative Order 1989-1, the Court of Appeals had discretion to grant or not grant Mr. Schock's request to videotape oral arguments. Therefore, this Court could not grant superintending control because there was no clear legal duty for the Court of Appeals to act.

Chief Justice Taylor and Justices Corrigan, Young, and Markman) adopted their "gag order" on December 6, 2006, and held a public hearing on how to enforce their "gag order" on January 17, 2007, I granted a video interview with Mr. Schock about the Michigan Supreme Court, which he has produced as a DVD.

The "gag order," Administrative Order 2006-8, states:

> All correspondence, memoranda and discussions regarding cases or controversies are confidential. This obligation to honor confidentiality does not expire when a case is decided. The only exception to this obligation is that a Justice may disclose any unethical, improper or criminal conduct to the JTC or proper authority.

The "gag order" was used by the "majority of four" to suppress my dissent in *Grievance Administrator v Fieger*, 471 Mich 1228, 1231 (2006), from December 6, 2006 until December 21, 2006. As I stated then, and as I have stated numerous times, an efficient and impartial judiciary is "ill served by casting a cloak of secrecy around the operations of the courts." *Scott v Flowers*, 910 F2d 201 (CA 5, 1990).

I am neither biased nor prejudiced for or against Mr. Schock and his company. There are no grounds for disqualification, and therefore I participate in this case.

Importantly, after this case became moot, and before this Court issued any order in this case, Mr. Schock sent a further communication to this Court on July 20, 2009. In this later communication, Mr. Schock asked that the Court consider the manner in which the Court of Appeals granted the request of another media organization to film oral arguments while only allowing Mr. Schock to tap in to the other organization's film feed, which obtained less footage of the oral arguments and was of a lower film quality than Mr. Schock would have been able to obtain if he had been allowed to film the argument with his own equipment.

Given the seriousness of the issue as to whether courts (the government) should be deciding which media (the press) is permitted to cover court cases and how media covers court cases, I request that this Court open an administrative file to review the 20-year-old policies pertaining to media filming of court proceedings contained in Administrative Order 1989-1.

Accordingly, I concur in the order granting immediate consideration and declaring the complaint for superintending control moot.

MARKMAN, J. (*concurring*).

I concur fully in the Court's order, but write separately to respond to Justice Weaver's non-disqualification statement. In particular, I write to respond to her characterization of herself for the thousandth time as a victim of a "gag order" by this Court. I believe that I can say with confidence, and as the official Michigan Reports will confirm, there has perhaps never been any more *ungagged* member of this Court, especially when it comes to breaching the kind of confidences to which any judicial body is entitled in its deliberations.

To the extent that there has ever been any supposed "gag order," it is reflected in Administrative Order No. 2006-8, which states in pertinent part that, "All correspondence, memoranda and discussions regarding cases or controversies are confidential." This order remains intact, even with the changing majority on this Court, and reflects the historic practices both of the Michigan Supreme Court and of every other state and federal court in this country from time immemorial. Justice Weaver's repeatedly-expressed unwillingness to abide by AO 2006-8, and this Court's consequent discussions concerning how best to maintain the integrity of its deliberations in light of Justice Weaver's conduct, do not make her the "victim" of a "gag order," or of anything else. Rather, they make her a justice who has seriously obstructed the people's work on this Court by rendering its deliberations subject to disclosure at her exclusive whim and in accord with her own unique recollections. No responsible judicial body can operate under such strictures, and the conferences of this Court have suffered considerably as a result. Justice Weaver's posture, shared by no other past or present justice, is one in which no other justice's views matter than her own.[2]

In response to similar assertions by Justice Weaver that she was the victim of a "gag order," former Chief Justice Clifford Taylor remarked several years ago that "despite the fact that a justice of this Court has now engaged, and continues to engage, in the unprecedented act of revealing deliberative confidences, every word of every statement of hers has been made public exactly as she has written it." *Grievance*

---

[2] Although Justice Weaver invariably places blame, as she does once again in this case, upon the "majority of four" for supposedly "gagging" her, previously she has placed blame upon *each* of her six colleagues for allegedly victimizing her in this way. See *In re Gilbert*, 469 Mich 1224, 1230 (2003) (in which Justice Weaver accused a "six-justice majority" of "suppressing" two of her statements, and engaging in a "cover-up," where, in an effort to persuade her to reconsider her conduct, her colleagues sought to *delay* Justice Weaver's statements, issuing a public denunciation of a judge whose Judicial Tenure Commission complaint was still pending before this Court and thereby undermining the fairness of his appellate process. As with every other statement that Justice Weaver has ever issued, these statements too were eventually published.

*Administrator v Fieger*, 477 Mich 1228, 1229 (2006).  This observation remains just as true today.[3]

CORRIGAN and YOUNG, JJ., join the statement of MARKMAN, J.

---

[3] Concerning Justice Weaver's decision in this case not to disqualify herself, I do not participate in this decision, but I note that: (a) despite having repeatedly criticized her colleagues for their ethical shortcomings in failing to recognize that a judge "may be the last person" to perceive bias in his or her own case, *Grievance Administrator v Fieger*, 476 Mich 231, 340 (2006), Justice Weaver, unlike Justice Hathaway, see *USF&G v Michigan Catastrophic Claims Ass'n*, 484 Mich ___ (2009), has not sought a vote from her colleagues approving or disapproving her own decision; and (b) despite having also repeatedly criticized her colleagues for their ethical shortcomings in abiding by the traditional "actual bias" test for disqualification, and having now proposed an alternative "appearance of impropriety" test, Justice Weaver is content in her own case to state merely, "I am neither biased nor prejudiced for or against Mr. Schock and his company." This is clearly an inadequate explanation for her decision under either her own test or under the newly-established 'objective' test of the United States Supreme Court in *Caperton v AT Massey Coal Co, Inc*, ___ US ___; 129 S Ct 2252; 173 L Ed 2d 1208 (2009).



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

July 29, 2009

0729

Clerk