# Order

**Michigan Supreme Court**
**Lansing, Michigan**

September 8, 2008

137136

Clifford W. Taylor,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman,
Justices

CITIZENS PROTECTING MICHIGAN'S
CONSTITUTION, LOWELL R. ULRICH,
MICHAEL BISHOP, ALAN L. CROPSEY,
VIRGIL SMITH, JR., and MIKE BRYANTON,
       Plaintiffs-Appellees,

v

    SC: 137136
    COA: 286734

SECRETARY OF STATE, and
BOARD OF STATE CANVASSERS,
       Defendants-Appellees,

and

REFORM MICHIGAN GOVERNMENT
NOW!,
       Intervening
       Defendant-Appellant.
_____/

On order of the Court, the briefs and oral arguments of the parties having been considered, we AFFIRM the result only of the August 20, 2008 judgment of the Court of Appeals. MCR 7.302(G)(1). In all other respects, leave to appeal is DENIED, because we are not persuaded that the remaining question presented should be reviewed by this Court.

TAYLOR, C.J., and CORRIGAN, J. (*concurring*).

We concur with the Court of Appeals judges and other justices of this Court that the doctrine of necessity applies and that, pursuant to it, we are required to participate in this case.

CAVANAGH, WEAVER, and MARKMAN, JJ. (*concurring*).

We concur in this Court's order affirming only the result reached in the August 20, 2008, judgment of the Court of Appeals for the following reason. Const 1963, art 12, § 2 provides with regard to constitutional amendments proposed under this section that "[t]he ballot to be used in such election shall contain a [true and impartial] statement of the purpose of the proposed amendment, expressed in not more than 100 words, exclusive of caption." This language establishes a clear limitation on the scope of constitutional amendments under § 2. Specifically, this statement of purpose must consist of a "true and impartial" statement that sufficiently, fairly, reasonably and understandably communicates to the people of this state the purpose of the amendment in "not more than 100 words." Such an interpretation of this provision is in accordance with the "'common understanding'" of the "'great mass of the people.'" *Traverse City School Dist v Attorney General*, 384 Mich 390, 405 (1971), quoting Cooley's Constitutional Limitations 81 (1868).[1] The instant proposal would alter or affect some 19,000 words of the Michigan Constitution, and would alter or affect some 28 sections of this constitution, including four separate articles, thus affecting each of the branches of state government. Because of the exigencies of the present election schedule, and because a proposal of this extraordinary scope and multitude of unrelated provisions clearly cannot be reasonably communicated to the people in "not more than 100 words," we agree with the Court of Appeals that this proposal cannot be placed on the ballot without violating our constitution.[2]

---

[1] "A constitution is made for the people and by the people. The interpretation that should be given it is that which reasonable minds, the great mass of the people themselves, would give it. For as the Constitution does not derive its force from the convention which framed, but from the people who ratified it, the intent to be arrived at is that of the people, and it is not to be supposed that they have looked for any dark or abstruse meaning in the words employed, but rather that they have accepted them in the sense most obvious to the common understanding, and ratified the instrument in the belief that that was the sense designed to be conveyed." *Traverse City School Dist, supra* at 405, quoting Cooley's Constitutional Limitations, *supra* at 81 (emphasis and internal quotation marks omitted).

[2] While Justice Kelly is correct that, under normal circumstances, this case should have been remanded to the Board of State Canvassers, having now heard oral arguments, and given the certainty that any decision of the board would have been immediately appealed back to this Court, we believe that it would be futile to remand at this late juncture. Whether the effective deadline for a ballot decision is this past Friday, as asserted by the

WEAVER, J. (*concurring*).

I agree with this Court's order finding that the Reform Michigan Government Now! proposed amendment is not qualified to be placed on the November 4, 2008, ballot for the reasons stated in my joint concurring statement with Justices Cavanagh and Markman. That statement is a restrained and disciplined interpretation of our Michigan Constitution. The statement applies the longstanding Michigan law, so wisely and well stated by Justice Cooley in Constitutional Limitations 81 (1868) and quoted in *Traverse City School Dist v Attorney Gen*, 384 Mich 390, 405 (1971), that our Constitution is interpreted in light of the common understanding of the ratifiers—the people of Michigan.

Common sense shows that the drafters and ratifiers of our Michigan Constitution required a purpose statement of "not more than 100 words" to be printed on the ballot so that voters would have sufficient, understandable, impartial, and true information on the ballot. This allows the voters to make an informed decision on the proposed constitutional amendment by reading the "not more than 100 words" purpose statement printed right on the ballot, without having to read the amendment itself and/or the proposal petition itself, which would likely contain many more than 100 words.

The Court of Appeals order finding that the RMGN proposed amendment is not qualified to be placed on the ballot reached the correct result, but for the wrong reasons. The Court of Appeals wrongly prohibited the Board of State Canvassers from doing its duty to decide whether or not to place the RMGN proposal on the November 4, 2008, ballot. The Board was scheduled to make that decision the day after the Court of Appeals order was issued.

The Court of Appeals opinion failed to consider and apply the "not more than 100 words" purpose statement requirement for qualification to be placed on the ballot for voter-initiated amendments by petition to our Michigan Constitution found right in § 2 of Art 12. Instead, the Court of Appeals reached out to rules created by the California Supreme Court and wrote into our Michigan Constitution words, phrases, and concepts such as: "qualitative," "quantitative," "two-prong test," "threshold determination," "foundation powers," all of which are not anywhere contained in Michigan's Constitution. Further, the Court of Appeals, in a kind of circular analysis—in reliance on

director of elections, or some later date, it is clear that an urgent decision from this Court is required under emergency circumstances.

California Supreme Court law, and then supported by California Supreme Court law—wrongly incorporated by interpretation into the Michigan Constitution these words, phrases, and concepts.

The Court of Appeals opinion is an example of judicial activism—of the unrestrained, mistaken use of the power of interpretation. Such California law interpreted directly into our Michigan Constitution, or circularly relied on for support, seems harmless in this case because it reaches the correct result, but it is harmful and dangerous for the future. It wrongly creates a "judicial veto" over future voter-initiated proposed amendments by petition even if such a proposed amendment were a one (1)-issue, single-purpose amendment whose "not more than 100 words" purpose statement for printing on the ballot would easily be sufficient, understandable, impartial, and true.

For example, *Raven v Deukmejian*, 52 Cal 3d 336 (1990), cited by the Court of Appeals, and approvingly cited by amicus Michigan Attorney General, is an example of a one (1)-issue, single-purpose, simply stated amendment proposal judicially vetoed from placement on the ballot by the California Supreme Court using the "foundation powers" concept.

Further, I note that Justice Corrigan's concurring statement, signed by Chief Justice Taylor and Justice Young, does not challenge the Court of Appeals opinion's distinction between "amendment" and "general revision." And it only questions the Court of Appeals direct interpretation into Michigan's Constitution judicially created California Supreme Court constitutional law, despite the fact that California's law results in a "judicial veto" of the people of Michigan's right to voter-initiated amendment of the Michigan Constitution by giving definitions to the words "amendment" and "revision" not contained in our Michigan Constitution.

Finally, as to the issue of disqualification of justices, I concur in this Court's denial of leave to appeal from the Court of Appeals August 13, 2008 order denying the motion for recusal (disqualification).[3]

As I stated in my recusal statement attached to the August 28, 2008 order granting the application for leave to appeal in this case, "[e]ven though I have 'more than de

---

[3] On August 13, 2008, the Court of Appeals denied intervening defendant Reform Michigan Government Now!'s motion for recusal (disqualification). Subsequently, RMGN filed an appeal with this Court on the recusal issue, along with its appeal on the merits.

minimis interest' (MCR 2.003(B)(5) in the outcome of this case, I decline to recuse myself because the common-law rule of necessity doctrine applies in this unique case."

Five of the seven justices of this Court, before participating in decisions and oral argument in this case, properly filed statements regarding their "more than de minimis interest[s]" in this unique case in accordance with Canon 3 of the Code of Judicial Conduct.[4] Only Chief Justice Taylor and Justice Corrigan failed to state their obvious "more than de minimis interest[s]" in this case. Although today, September 8, 2008, Chief Justice Taylor and Justice Corrigan filed a joint statement concurring with the other justices that the doctrine of necessity required that they participate, neither Chief Justice Taylor nor Justice Corrigan disclosed that they have "more than de minimis interest[s]" in this case. Thus, I agree with and support Justice Cavanagh's statement of August 28, 2008, in this case that this Court needs written, clear rules regarding the disqualification of Justices.

This 2008 RMGN case again highlights the need for this Court to have written, clear rules regarding the disqualification of justices. Since May 2003, I have repeatedly called for this Court to recognize; publish for public comment; place on a public hearing agenda; and address the need to have written, clear, fair, orderly, and public procedures concerning the participation or disqualification of justices. See, e.g., statement or opinion by Weaver, J., in *In re JK*, 468 Mich 202, 219 (2003); *Gilbert v DaimlerChrysler Corp*, 469 Mich 883 (2003); *Advocacy Org for Patients & Providers v Auto Club Ins Ass'n*, 472 Mich 91 (2005); *McDowell v Detroit*, 474 Mich 999, 1000 (2006); *Stamplis v St John Health Sys*, 474 Mich 1017 (2006); *Heikkila v North Star Trucking, Inc*, 474 Mich 1080 (2006); *Lewis v St John Hosp*, 474 Mich 1089 (2006); *Adair v Michigan*, 474 Mich 1027, 1044 (2006); *Grievance Administrator v Fieger*, 476 Mich 231, 328 (2006); *Grievance Administrator v Fieger*, 477 Mich 1228, 1231 (2006); *People v Parsons*, 728 NW2d 62 (2007); *Ruiz v Clara's Parlor*, 477 Mich 1044 (2007); *Neal v Dep't of Corrections*, 477 Mich 1049 (2007); *State Auto Mutual Ins v Fieger*, 477 Mich 1068, 1070 (2007); *Ansari v Gold*, 477 Mich 1076, 1077 (2007); *Short v Antonini*, 729 NW2d 218 (2007); *Flemister*

---

[4] Canon 3 in pertinent part is set forth below:

> **CANON 3. A Judge Should Perform the Duties of Office Impartially and Diligently**
>
> \* \* \*
>
> **C. Disqualification.** A judge should raise the issue of disqualification whenever the judge has cause to believe that grounds for disqualification may exist under MCR 2.003(B).

*v Traveling Med Svcs*, *PC*, 729 NW2d 222, 223 (2007); *McDowell v Detroit*, 477 Mich 1079, 1084 (2007); *Johnson v Henry Ford Hosp*, 477 Mich 1098, 1099 (2007); *Tate v Dearborn*, 477 Mich 1101, 1102 (2007); *Dep't of Labor & Economic Growth v Jordan*, 480 Mich 869 (2007); *Cooper v Auto Club Ins Ass'n,* 739 NW2d 631 (2007).

Also see my personally funded website—http://www.justiceweaver.com.

CORRIGAN, J. (*concurring*).

I join the Court's order affirming the result of the Court of Appeals judgment. On the basis of my review, which was limited by time constraints, I do not see a clear error in the Court of Appeals articulation of the distinction between an "amendment" and a "general revision" of the Michigan Constitution, its explanation of the separate methods for enacting each, or its conclusion that the proposal here is a "general revision." Although I respectfully question the importation of caselaw from California and other foreign jurisdictions, I believe that the Michigan authorities cited in the Court of Appeals opinion fully support its rationale and decision.

TAYLOR, C.J., and YOUNG, J., join the statement of CORRIGAN, J.

KELLY, J. (*dissenting*).

I would not affirm the Court of Appeals decision. Instead, after oral argument and deliberation on September 3, I would have granted leave to appeal and, retaining jurisdiction, would have remanded the matter to the Board of State Canvassers.

Within the statutory time constraints,[5] the Court should have instructed the Board of State Canvassers to submit to the Court its proposed 100-word statement of purpose

---

[5] The parties offered differing timetables for when this litigation must be resolved to allow for timely printing and delivery of the November ballots. One argued that the Court must take final action by September 16, the deadline for the Secretary of State to certify the ballot. Another submitted an affidavit of Christopher Thomas, director of elections for the state of Michigan, stating that, from a practical standpoint, all proposal language must be certified to the county clerks no later than September 5. The affidavit stated that the September 5 deadline was necessary to ensure timely printing of the ballots. But it also noted that the Michigan Democratic Party's convention on September 6 would delay full certification of the ballot until September 8. The Court of Appeals rendered its decision on August 20. An appeal was filed in this Court on August 22.

for the ballot initiative.  The Court should then have reviewed the proposal to determine whether it provided a true and impartial statement of the purpose of the initiative.  If the language were adequate, it should have put the initiative on the ballot.  If inadequate, it should have ordered the initiative off the ballot.

I agree with the statement of Justices Cavanagh, Weaver, and Markman that our state constitution at article 12, section 2, "establishes a clear, albeit indirect, limitation on the scope" of constitutional ballot initiatives.  I believe that the limitation is in the requirement that the initiative be capable of being communicated to the voters in not more than 100 words.  I agree, also, that any such statement of purpose must be easily understandable.

But, without having the Board of State Canvassers' proposed language before it, how can this Court determine that a legally acceptable statement of purpose cannot possibly be made in 100 words?  It does not follow "as the night the day"[6] from the fact that the initiative is lengthy and complex that it cannot be summarized adequately in 100 words.  I find that Justices Cavanagh, Weaver, and Markman prejudge this question, and at this point, I am not prepared to conclude that a legally adequate summary is impossible.

Also, I respectfully disagree with Justice Corrigan's assertion that "the Michigan authorities cited in the Court of Appeals opinion fully support its rationale and decision." The Court of Appeals concluded that the Reform Michigan Government Now! (RMGN) petition "plainly" constitutes a "general revision" of the state constitution and therefore does not meet the constitutional prerequisites for a ballot initiative.[7]  Having considered the text of the constitutional provisions at issue and the limited authority available, I cannot agree.

THE ESSENTIAL 100-WORD STATEMENT OF PURPOSE

---

Regardless of which deadline one accepts, ample time existed for this Court to receive input from the Board of State Canvassers and render a decision after completing oral argument on September 3.

[6] William Shakespeare, *Hamlet*, act 1, scene 3.

[7] See *Citizens Protecting Michigan's Constitution v Secretary of State*, ___ Mich App ___, issued August 20, 2008 (Docket No. 286734) slip op at 21; and accompanying order, ___ Mich App ___, entered August 20, 2008; Const 1963, art 12, §§ 2 and 3.

The following is the statement of purpose proposed for the initiative but, because of the courts' intervention, not yet acted on by the Board of State Canvassers:

**A proposal to amend the state constitution to alter the legislative, executive and judicial branches of state government.**

The proposed constitutional amendment would:
- Require no-reason absentee voting.
- Limit election officials' support of candidates.
- Create separate Office of Elections to supervise elections.
- Create direct initiation of laws by petition.
- Reduce number of Senate and House districts.
- Establish bipartisan commission and standards for creating legislative districts; prohibit state court review of districts.
- Prohibit former elected officials from lobbying for 2 years.
- Reduce salaries, limit retirement benefits and disclose personal finances of legislative, executive and judicial officials.
- Disclose Legislature's financial records.
- Limit state departments to 18; cap boards/commissions.
- Reduce size of Supreme Court and Appeals Court; add circuit judges.
- Transfer discipline of judges to new commission

Should this proposal be adopted?

It is true that certain details of the ballot initiative do not appear in the proposed statement of purpose. But, it is the publicly stated position of the director of elections that article 12, § 2 of the Michigan Constitution does not require that the statement of purpose include every change the initiative would effectuate.[8] The Court should make a definitive ruling on this question.

THE AMENDMENT/REVISION DISTINCTION

---

[8]<http://www.southbendtribune.com/apps/pbcs.dll/article?AID=/20080904/News01/8090 40446/1052/News01> (accessed September 5, 2008) ("[E]lections director Chris Thomas told reporters he agreed with Reform Michigan Government Now's stance on the 100-word limit . . . . He said there's a difference between describing every part of a measure and telling voters its purpose. 'I can show you lots of proposals where substantial things didn't get included,' Thomas said of past ballot issues.")

In differentiating between an amendment and a revision, the Court of Appeals rendered several conclusions that are at best weakly supported and lack the comprehensive analysis this case requires. For example, the Court determined that it is "not possible to 'define with nicety the line of demarcation' between an 'amendment' and a 'general revision.'"[9] But the panel then determined that it is unnecessary to attempt to draw such a line, because the RMGN petition would, in any event, clearly cross it and constitute a revision. As noted previously, little Michigan caselaw exists on the distinction between a constitutional amendment and a constitutional revision. The Court of Appeals seems to be saying that, although no clear definition is available, it knows a revision when it sees it. I find this reasoning unconvincing.

The distinction between an amendment and a revision that was acceptable to the Court of Appeals was that urged by the plaintiffs. But the plaintiffs cited no constitutional language supporting the distinction. They relied on *Kelly v Laing*,[10] a case that involved interpretation not of a constitution but of a city charter. As RMGN argued before this Court, the use of *Kelly* to make the distinction between a constitutional

---

[9] *Citizens Protecting Michigan's Constitution*, *supra* at ___, slip op at 19, quoting *McFadden v Jordan*, 32 Cal 2d 330, 348 (1948).

[10] *Kelly v Laing*, 259 Mich 212 (1932). Nowhere in the language of the Michigan Constitution is "amendment" or "revision" defined. Two sections address amendments and revisions, but they lay out only the procedural formalities necessary for a proposal to be ballot-eligible. They do not expressly or impliedly provide criteria for distinguishing between an "amendment" and a "revision." To support its distinction, the Court of Appeals relied heavily on *Kelly*. That opinion rejected the dictionary definitions of "revision" and "amendment," stating that the words "implie[d]" and "suggest[ed]" different meanings. *Id.* at 217-218. The current majority of this Court has explicitly rejected such reasoning many times. In *National Pride at Work, Inc v Governor of Michigan*, 481 Mich 56, 67-68 (2008), it stated: "This Court typically discerns the common understanding of constitutional text by applying each term's plain meaning at the time of ratification." This majority routinely consults dictionaries to ascertain the plain meaning of a term. *Cox v Flint Bd of Hosp Managers*, 467 Mich 1, 18 (2002). The dictionary definitions of "amend" and "revise" do not support the Court of Appeals decision in this case.

amendment and a constitutional revision is dubious. The authority cited in *Kelly* in support of its amendment/revision distinction is marginal at best.[11]

STATE PUBLIC POLICY STRONGLY SUPPORTS SUBMITTING
BALLOT INITIATIVES TO THE VOTERS

When analyzing this case, the Court's public policy must not be overlooked. It has long been recognized that the citizens' right to decide whether to amend the state constitution must be zealously protected.[12]

One hundred years ago, Michigan adopted the direct citizen initiative in the Michigan Constitution of 1908. Initially, it allowed the Legislature to veto any citizen-initiated proposal to amend the constitution. However, only five years after its adoption, the constitution was amended, eliminating the Legislature's power to override the will of the citizenry to amend the constitution.

Cases decided by this Court since then have consistently rejected limitations on citizen-initiated amendments, especially *before* the people have an opportunity to vote on

---

[11] The language from *Kelly* most relied on by plaintiffs to distinguish an "amendment" from a "revision" cites *Livermore v Waite*, 102 Cal 113 (1894), and *a dissenting opinion* from *People v Stimer*, 248 Mich 272, 287 (1929). *Kelly, supra* at 217-218. Hence, *Kelly* relied on foreign law and a Michigan Supreme Court dissent. Having nothing other than *Kelly*, the Court of Appeals also relied on *McFadden*, *supra*, more foreign law. *McFadden* based its amendment/revision distinction primarily on the California case of *Livermore*, *supra*. I agree with Justice Corrigan's questioning of the importation of California law to define the Michigan Constitution. *Kelly*'s reliance on *Livermore* reduces its persuasiveness, in my mind. Finally, it is hardly worth mentioning that the *Stimer* dissent is not binding authority. Therefore, the *Kelly* Court's reliance on that dissent only further undermines the value of its conclusions regarding the amendment/revision distinction.

[12] "This Court has a tradition of jealously guarding against . . . encroachments on the people's right to propose laws and constitutional amendments through the petition process." *Ferency v Secretary of State*, 409 Mich 569, 601 (1980), citing *Wolverine Golf Club v Secretary of State,* 384 Mich 461 (1971).

them.[13]  This Court has also specifically noted the absence of a single-subject limitation for a proposed constitutional amendment, such as the one adopted in California.[14]

It is therefore well settled in Michigan law that our public policy recognizes the importance of allowing voters whenever possible to use the ballot box to decide issues.[15] This policy has been enshrined in the Michigan Constitution for a century.[16]  And, when assessing the validity of ballot measures, this Court has consistently held that important public policy in high esteem.[17]

Hence, the Court should proceed with great caution when deciding to withhold the decision on this ballot initiative from the people of the state.  To do so without allowing the Board of State Canvassers to adopt a statement of purpose does not reflect such caution and is, in my opinion, a rush to judgment.

THE UNFORTUNATE RAMIFICATIONS OF TODAY'S ORDER

---

[13] *Ferency, supra* at 601-602; *City of Jackson v Comm'r of Revenue*, 316 Mich 694 (1947); *Hamilton v Secretary of State*, 212 Mich 31 (1920).

[14] *Graham v Miller*, 348 Mich 684, 692 (1957).  Appellees argued in the alternative before the Court of Appeals that this initiative violates the Michigan Constitution because the constitution allows only amendments that embrace a single purpose.

[15] See *Blank v Dep't of Corrections*, 462 Mich 103, 150 (2000) (Markman, J., concurring) ("Indeed, there is no more constitutionally significant event than when the wielders of '[a]ll political power' under [the Michigan Constitution], choose to exercise their extraordinary authority to directly approve or disapprove of an amendment thereto."); *Grand Rapids City Clerk v Superior Court Judge,* 366 Mich 335, 340 (1962) (reversing temporary injunction enjoining annexation election because "[t]he people are more closely involved with their government in elections than in almost any other process.  Interference by the courts . . . should be avoided.  Those complaining of the election have a clear and adequate remedy by quo warranto to test the constitutional issue in the event of a favorable vote.").

[16] See Const 1963, art 2, § 9; Const 1908, art 5, § 1 (reserving the powers of initiative and referendum to the people of Michigan).

[17] "[W]e are not unmindful of the fact that to now declare the amendment a nullity would thwart the expressed will of the voters."  *City of Jackson*, *supra* at 711.

I also note that, by affirming only the result reached by the Court of Appeals, the majority leaves the law in this area sadly unsettled. Rather than articulate its own analysis of the issues, the majority elects simply to summarily keep the initiative off the ballot while rejecting the reasoning of the Court of Appeals. What guidance has this Court offered to individuals and organizations that wish to sponsor ballot initiatives in the future? How are they to know how many constitutional changes in one initiative are too many, or how sweeping is too sweeping?

The Reform Michigan Government Now! petition contains approximately 19,000 words and makes changes or additions to 28 different sections of the constitution. Some of my colleagues indicate, without support carrying precedential force, that this initiative is unconstitutional because it is too extensive. Would an initiative with 18,000 words pass constitutional muster? Would one making changes to 27 sections of the constitution be excessive?

Some of my colleagues opine, without explanation, that it would be impossible to provide a true and impartial statement of this ballot initiative in 100 words. To what extent, then, must statements of purpose for future initiatives be more detailed than those in the past? Does rendering it more difficult to get a ballot proposal approved by the Elections Division and the Board of State Canvassers not contradict our public policy?

The Court fails to provide standards that would answer these essential questions. I submit that we have neglected our duty to the citizens of Michigan to serve as the final arbiter of the law. And in few instances is that duty more important than in this case.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

September 8, 2008

_Corbin R. Davis_

Clerk

0908