# Order

**Michigan Supreme Court**
**Lansing, Michigan**

November 14, 2008

Clifford W. Taylor,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman,
Justices

135702

JANEANE WILCOX,
      Plaintiff-Appellee,

v

JOHN B. MUNGER, Personal Representative of
the Estate of Keith Phillip Heika,
      Defendant,
and

MICHIGAN MUNICIPAL RISK MANAGEMENT
AUTHORITY,
      Defendant-Appellant.

SC: 135702
COA: 275329
Oakland CC: 06-071889-CK

_____/

On order of the Court, the application for leave to appeal the December 20, 2007 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the question presented should be reviewed by this Court.

MARKMAN, J. (*concurring.*)

Although I agree with the result reached by the Court of Appeals, I respectfully disagree with aspects of its analysis.

While on duty as a police officer, Officer Keith P. Heika sexually assaulted Janeane Wilcox. After Heika committed suicide, Wilcox sued both Heika's estate and the Michigan Municipal Risk Management Authority (MMRMA). The MMRMA provides its members coverage for "personal injury" and "wrongful act[s]" that result in an award of money damages. As defined in the MMRMA's policy, personal injury consists of the "violation of civil, statutory or constitutional rights, discrimination or harassment arising out of employment or law enforcement operations." Only "members" are covered by this policy, which encompasses any employee "while acting within the scope of their official duties or operations on behalf of the Member [employer]." Thus,

the question becomes whether Heika was a member acting within the scope of his official duties or operations on behalf of his employer.

In *Zsigo v Hurley Med Ctr*, 475 Mich 215, 221 (2006), this Court held that an employee who sexually assaults a victim while "'purport[ing] to act or to speak on behalf of the principal . . . or [who] was aided in accomplishing the tort by the existence of the agency relationship'" is "'clearly [acting] outside the scope of [his] employment.'" (Citation Omitted.) Thus, we have concluded that an employee who would have been unable to commit a tort "but for" his status as an employee is *not* acting within the scope of his employment. Despite *Zsigo*, the Court of Appeals, in concluding that Heika *was* a covered member acting within the scope of his employment, stated that "but for Heika's status as a police officer and his response to a call as part of his official duties he would not have gone inside plaintiff's home," where the assault occurred. *Wilcox v Munger*, unpublished opinion per curiam of the Court of Appeals, issued December 20, 2007 (Docket No. 275329), at 3. Because *Zsigo* explicitly rejected this "but for" analysis, the Court of Appeals erred, in my judgment, in ignoring this Court's directive regarding what falls outside the scope of one's employment.

The Court of Appeals also offered a separate rationale for why Heika was acting within the scope of his employment. Without specifically referencing *Zsigo*, the Court of Appeals noted that the MMRMA's policy purported to cover personal injury including "'violation[s] of civil, statutory or constitutional rights, discrimination or harassment,'" *id*., which *Zsigo* would have excluded. In rejecting the MMRMA's definition of "scope of employment," which was based on *Zsigo*, the Court of Appeals stated that, "[p]er the coverage documents, Heika is afforded coverage for the claim of sexual assault (wrongful act) committed while he was acting within the scope of his employment, yet by virtue of committing the personal injury (or wrongful act) action, is deemed to have not been acting within the scope of his employment." *Id*. The Court of Appeals reasoned that this result is "ambiguous" and that such ambiguity must be resolved against the drafter (MMRMA), thereby entitling Heika to coverage. The Court of Appeals rationale again, in my judgment, is incorrect.

Courts should be exceedingly loath to find ambiguity, because there is rarely any clearcut rule of decision-making under such circumstances and decisions often tend to partake of quasi-legislative exercises of judicial power. As this Court stated in *Lansing Mayor v Pub Service Comm*, 470 Mich 154, 165-166 (2004), ambiguity does not exist unless two provisions "irreconcilably conflict" with one another or when one provision is "equally susceptible" to more than one meaning. The MMRMA's policy, while perhaps unclear or could have been more precise, is not ambiguous. When analyzing the definition of "personal injury" in conjunction with "scope of employment," the MMRA's policy is explicable under *Zsigo* because it can reasonably be interpreted to provide coverage to an employee who infringes the rights of another at the instruction of the

employer. For example, this policy would cover a situation in which a police department routinely encourages, or requires, its officers to arrest a disproportionate number of minorities or discriminate against women when hiring. This interpretation would give full effect to the MMRMA's policy, which covers members who are violating the rights of other individuals with the approval of their employers, while simultaneously giving due deference to this Court's definition of "scope of employment" in *Zsigo*. Thus, the Court of Appeals is incorrect that the policy's coverage of personal injury cannot be read in harmony with *Zsigo's* definition of scope of employment. However, despite my disagreement with the Court of Appeals' analysis, I believe that it correctly concluded that Heika is entitled to coverage.

The MMRMA's policy covers *both* "personal injury" and "wrongful acts." The policy defines a wrongful act as "an actual or alleged error, misstatement, act, omission, neglect or *breach of official duty* including misfeasance, malfeasance and nonfeasance." (Emphasis added). When this provision is contrasted with *Zsigo's* definition of "scope of employment," it becomes reasonably clear that the parties contractually altered what constitutes "scope of employment." Indeed, the definition of "wrongful acts" specifically contemplates coverage for a breach of official duties, which is the exact type of conduct that was excluded in *Zsigo*. Because the MMRMA contractually agreed to include liability for a breach of official duties, which might otherwise fall outside an employee's scope of employment, Heika's estate, I believe, is entitled to coverage under the policy.

In sum, although the Court of Appeals erred by (1) applying the "but for" definition of "scope of employment" that this Court rejected in *Zsigo* and (2) finding the contract "ambiguous," it nonetheless reached the correct result because the contract itself expanded the definition of "scope of employment" to include Heika's breach of his official duties.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

November 14, 2008

_Corbin R. Davis_
Clerk