

STATE OF MICHIGAN

SUPREME COURT

ANTHONY PELLEGRINO, as Personal
Representative of the Estate of SHIRLEY
ANN PELLEGRINO, Deceased, and
ANTHONY PELLEGRINO, individually,

        Plaintiff-Appellee,

v                                         No. 137111

AMPCO SYSTEMS PARKING,

        Defendant-Appellant.

---

Statement of Justice Markman Denying Plaintiff's Motion to Disqualify

January 28, 2010

## INTRODUCTION

After 175 years of operation of a procedure on the Michigan Supreme Court in which individual justices have decided disqualification motions made against themselves, and in which the applicable standard focused upon whether a justice was "actually biased" against a party, this Court has now adopted a procedure wherein each justice votes upon the disqualification motion of the others, and in which the applicable standard is the considerably more vague and uncertain "appearance of impropriety." Thus, a procedure, and a standard, that have served this Court well since the inception of our statehood in ensuring an honest and honorable Michigan Supreme Court, and that continue to serve well the United States Supreme Court and the supreme courts of the majority of states of this Union, have been replaced with a procedure, and a standard, that, in my judgment, will: (a) incentivize disqualification motions and thereby produce a

considerable increase in the number of such motions and in the amount of time and effort devoted by this Court to addressing disqualification motions; and (b) introduce an unprecedented degree of gamesmanship and politicization into the judicial process by allowing attorneys to influence which duly-appointed justices will be allowed to participate in deciding their own cases and controversies. It is frequently popular to proclaim "reform," but I fear that time will demonstrate that wisdom here would have been better served by regard for the judgment of all the previous generations of jurists who have served on this Court for what is now approaching two centuries. However, in order to participate in this case under our new rules, and thereby carry out the judicial responsibilities conferred upon me by the people of Michigan in accordance with their constitution, I offer the following statement.

-------------------------------------------------------------------------------------------

MARKMAN, J. Plaintiff's counsel, Geoffrey Fieger, has filed a motion asking that I be disqualified from participation in this case on the grounds that I am "biased and prejudiced" against him. He has moved for the disqualification of Justices CORRIGAN and YOUNG on the same grounds, as he has also previously moved for the disqualification of former Chief Justice TAYLOR. I decide this motion under our revised disqualification procedure set forth in MCR 2.003, and deny.

First, after having carefully considered the instant motion, just as I have carefully considered each of counsel's fourteen previous motions for my disqualification, I am personally convinced that I can fairly and impartially consider the present appeal, just as in the past I have fairly and impartially considered appeals in which counsel has been a party or in which he or his law firm have represented other parties.

Second, as I stated in *Grievance Administrator v Fieger*, 476 Mich 231, 281 (2006) (separate opinion of TAYLOR, CORRIGAN, YOUNG and MARKMAN, JJ.), I have sought in every case coming before this Court to give faithful meaning to the law, to decide disputes fairly and impartially, and to judge matters without bias or prejudice. I remain committed to these propositions and would never confer upon any attorney or party anything other than equal and even-handed treatment under the law as I understood it.

Third, counsel has prevailed in those cases in which, in my judgment, the law was on his side, and he has not prevailed in those cases in which, in my judgment, the law was not on his side, and I have set forth my analyses in the opinions of this Court with a thoroughness equivalent to that of other justices. Although I do not believe that votes that I have cast in counsel's favor dispositively evidence lack of bias and prejudice any more than do votes cast in

opposition evidence bias or prejudice-- for impartiality is not determined by a judge's 'batting average' in cases involving particular attorneys or parties-- it does seem highly relevant that I have ruled in counsel's favor in cases in which he represented others, in cases in which he himself was a malpractice defendant, and in cases in which he himself was the subject of an attorney grievance investigation. See, e.g., *Beaudrie v Henderson*, 465 Mich 124 (2001) (reversing Court of Appeals and reinstating lawsuit filed by counsel's client); *Dietrich & Associates v Rogers and Fieger*, 474 Mich 898 (2005) (upholding Court of Appeals ruling that plaintiff's lawsuit against counsel was barred on res judicata grounds); *Lawsuit Financial, LLC v Curry and Fieger*, 471 Mich 885 (2004) (upholding Court of Appeals ruling that plaintiff's conversion and tortious interference claims against counsel were properly dismissed); and *Grievance Administrator v Fieger,* 469 Mich 1241 (2003) (upholding Attorney Discipline Board's dismissal of Grievance Administrator's complaint of misconduct against Mr. Fieger after he accused a prosecutor of "covering up a murder").

Fourth, counsel and his law firm, of which he is a named partner, have also prevailed in other cases. See, e.g., *Zunich v Family Med Associates of Midland, PC*, ___ Mich ___, 134640 and 134641 (2009); *Wilson v Keim*, 483 Mich 900 (2009), *Conn v Asplundh Tree Expert Co*, 478 Mich 930 (2007); *Cauff v Fieger, Fieger, Kenney & Johnson, PC*, 483 Mich 1021 (2009); *LaBarge v Walgreen Co*, 480 Mich 1136 (2008); *Am Axle & Mfg Holdings, Inc v Nat'l Union Fire Ins Co*, 481 Mich 868 (2008); *LaBarge v Walgreen Co*, 482 Mich 976 (2008); *Wilcox v Munger*, 482 Mich 1049 (2008); *Short v Antonini*, 480 Mich 991 (2007); *Briggs v Oakland County,* 480 Mich 1006 (2007); *State Auto Mut Ins Co v Fieger*, 477 Mich 1068 (2007); *Hallman v Holy Cross Hosp of Detroit*, 475 Mich 874 (2006); *Janusz v Sterling Millwork Inc,* 476 Mich 859 (2006); *Laporte v William Beaumont Hosp*, 472 Mich 892 (2005); *Savitskie v Gagnon*, 474 Mich 852 (2005); *Sinacola v Leland Twp*, 472 Mich 886 (2005); *Parr v Dutt*, 469 Mich 1016 (2004); and *Scott v Kolk*, 468 Mich 896 (2003). I enumerate these cases only because I do not know what showing satisfies the Court's new 'appearance of impropriety' standard, and, once again, it seemed highly relevant that counsel has sometimes prevailed in his arguments before me and he has sometimes not.

Fifth, I note that I did disqualify myself from participation in *Fieger v Cox*, 480 Mich 874 (2007), a case in which counsel was the named plaintiff, because that case pertained to an Attorney General's investigation of counsel's financial conduct undertaken in connection with my judicial reelection campaign in 2004. Moreover, I have regularly disqualified myself in other cases over ten years on this Court, and four years on the Court of Appeals, in which I believed my participation would have been contrary to the law or to the highest ethical standards.

Sixth, I note that plaintiffs' counsel has appealed my participation in a case on at least three occasions to the United States Supreme Court, but after

consideration that court has denied certiorari in each of these. *Graves v Warner Bros,* cert den 542 US 920 (2004), *Gilbert v Daimler Chrysler Corp*, cert den 546 US 821 (2005), *Grievance Administrator v Fieger*, cert den 549 US 1205 (2007).

Seventh, I note that plaintiff's counsel does not cite anything in support of his motion to disqualify me that has occurred within the past nine years. He mistakenly attributes to 2002 several matters that are supported by exhibits as having occurred during 2000. While, properly, there may be no statute of limitations to claims of bias or prejudice, the staleness of a complaint must at least constitute one factor in assessing the "appearance of propriety" of a justice's current participation in a case.

Eighth, counsel raises several matters that occurred during my election campaign in 2000: (a) the underlying context of that campaign as it pertains to counsel has been previously characterized by four Justices as follows, "In 1998, Mr. Fieger ran for Governor of Michigan on the Democrat ticket. As such, in 2000, he was the most visible member and the titular head of the Michigan Democrat Party, which was then channeling millions of dollars in opposition to our election campaigns. Mr. Fieger was outspoken, particularly about his views of our state's legal and judicial systems, and his statements received a great deal of exposure through both the media and opposition campaign communications. In addition, Mr. Fieger himself contributed substantial amounts of money in opposition to our campaigns while also being highly vocal in his political opposition . . . A highly visible and outspoken public figure, who is an integral part of the political opposition to a judicial candidate, cannot be insulated from mention, or even criticism, in a judicial campaign because he also happens to be a lawyer." *Grievance Administrator v Fieger*, 476 Mich 231, 269-270 (2006) (opinion by TAYLOR, CORRIGAN, YOUNG and MARKMAN, JJ.); (b) counsel cites instances in which organizations altogether unconnected with my judicial campaign negatively invoked his name. Even if counsel's assertions are accurate, I had no connection with these statements; I did not produce them, I did not approve them, and I was not responsible for them. Indeed, it would have been unlawful for me to have been involved in the campaign activities of these organizations, and I was not; (c) counsel cites a speech that I gave to the Michigan Medical Society to which he takes offense because of a reference to "trial lawyers." However, what is significant is that such speech does not refer to counsel in any way, and the objected-to reference is separated from its surrounding context in which I assert that I am "not pro-any interest group or anti-any interest group . . . or pro-medical profession or anti-medical profession, or pro-hospital or anti-hospital because "that is not how judges should approach their responsibility," and further observe that "[the Michigan Supreme Court] has upheld medical malpractice reform, [not] because it is pro-medical malpractice reform or anti-medical malpractice reform, but because elected representatives are

4

allowed in a free and self-governing society to undertake these kind of decisions;" I also later make an attempt at humor, the lesson of which is that in contributing financially to my judicial campaign, one receives absolutely nothing tangible in return; (d) counsel cites a joint radio advertisement from Justices TAYLOR, YOUNG, and myself which states that counsel supported the three candidates who were running in opposition. Apart from the fact that such advertisement was clearly constitutionally-protected campaign speech, *Minnesota v White*, 536 US 765 (2002), it was accurate, relevant, and, I believe, fair and reasonable commentary on one aspect of the judicial election, constituting an effort to better define the consequences of that election for a public which had recently been made extremely well aware of counsel's perspectives on legal and judicial issues; and (e) apart from this single reference to counsel, and to the best of my imperfect recollection, I cannot recall having mentioned his name during many hundreds of campaign speeches in running for the Court of Appeals in 1996 and 1998, the Supreme Court in 2000 and 2004, or in any other public speech, and certainly did not do so on any regular or even sporadic basis.

Ninth, that counsel has repeatedly sought my disqualification on numerous past occasions, does not afford an independent ground for my disqualification. "[I]t cannot be that a judge can be required to disqualify himself or herself on the basis of 'abuse' that he has allegedly received from an attorney or litigant. To allow such conduct to constitute a basis for disqualification would simply be to incentivize such conduct on the part of any attorney or litigant desirous of excluding a disfavored judge from participation in his or her case." *Grievance Administrator v Fieger*, 475 Mich 1211, 1212-1213 (2006); *Grievance Administrator v Fieger*, 476 Mich 231, 274 (2006). A judge does not become improperly "enmeshed" with counsel on this basis.

Finally, in deciding more than 40,000 judicial cases and controversies since I have served as a judge, I have decided countless such matters in favor of parties, causes and attorneys for which I had limited personal regard, and I have decided countless such matters in opposition to parties, causes and attorneys for which I had considerable personal regard. In my many public statements concerning the judicial role, I have regularly invoked the observation of former United States Supreme Court Justice Felix Frankfurter that "the highest example of judicial duty is to subordinate one's personal will and one's private views to the law." I have always attempted to live up to this standard in my judicial decisions.

Therefore, after considering the instant motion for disqualification, I deny the motion because: (1) I have examined my conscience, and believe that I am able to accord fair and impartial treatment to plaintiff's counsel and will, as I have always done, decide this case on its merits; (2) based on "objective and reasonable perceptions," I do not believe that my participation in this case will produce a

5

"serious risk of actual bias impacting the due process rights of a party;" and (3) "based on objective and reasonable perceptions," I do not believe my participation in this case creates an "appearance of impropriety," a standard that must be assessed "in light of what can be gleaned from existing court rules and canons, historical practices and expectations, and common sense." *Adair v State of Michigan*, 474 Mich 1027, 1039 (2006).